# United States Court of Appeals for the Federal Circuit

_____

**PACIFIC GAS & ELECTRIC COMPANY,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

_____

2010-5123

_____

Appeal from the United States Court of Federal Claims in consolidated Case Nos. 04-CV-0074 and 04-CV-0075, *Chief Judge* Emily C. Hewitt.

_____

Decided: February 21, 2012

_____

CARTER G. PHILLIPS, Sidley Austin, LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief were VIRGINIA A. SEITZ and LOWELL J. SCHILLER. Of counsel on brief was JERRY STOUCK, Greenberg Traurig, LLP, of Washington, DC.

HAROLD D. LESTER, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, argued of Washington, DC, for defendant-appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON,

Director, MARIAN E. SULLIVAN, Senior Trial Counsel, SETH W. GREENE, ANTHONY W. MOSES and SCOTT SLATER, Trial Attorneys.  Of counsel on the brief was JANE K. TAYLOR, Office of General Counsel, United States Department of Energy, of Washington, DC.

---

Before RADER, *Chief Judge*, PLAGER and LOURIE, *Circuit Judges*.

RADER, *Chief Judge*

In this spent nuclear fuel case, the United States Court of Federal Claims entered a damages judgment in favor of Plaintiff-Appellee Pacific Gas & Electric Company ("PG & E").  Because the new judgment accounts for the proper causation times and principles, this court affirms the trial court's decision.

## I.

This court heard this case earlier and will not repeat the complete factual background.  *Pac. Gas & Elec. Co. v. United States*, 536 F.3d 1282, 1284-87 (Fed. Cir. 2008).  This case, like its predecessor, "involves the damages calculation" for the Government's partial breach of the Standard Contract.  *Id.* at 1284.  In the earlier 2008 appeal, the trial court had relied upon the 1991 Annual Capacity Report ("ACR") and the "duty of good faith and fair dealing."  This court determined that 1991 ACR was an incorrect acceptance rate.  *Id.* at 1284.  Instead, this court, at a time after the trial court's ruling, had set the 1987 ACR as the appropriate acceptance rate for a causation analysis under the Standard Contract.  *Id.* at 1291-92.  On remand, the trial court had "the opportunity to calculate the damages owed to PG & E for [the Department of Energy's ("DOE")] partial breach of the Standard Contract."  *Id.* at 1292.

On remand, the trial court "focuse[d] on whether the costs claimed as damages by PG & E were incurred as a direct and reasonably foreseeable result of defendant's partial breach of the [Standard Contract]." *Pac. Gas & Elec. Co. v. United States*, 92 Fed. Cl. 175, 179 (2010). Plaintiffs claimed the following six categories of damages:

(1) costs incurred related to the evaluation of storage options and the licensing and construction of an independent spent fuel storage installation (ISFSI) and temporary racks at its Diablo Canyon power plant; (2) costs incurred for maintaining its Humboldt Bay power plant in custodial [safe storage ("SAFSTOR")] status after 1998; (3) costs incurred in the licensing and construction of an ISFSI at its Humboldt Bay plant; (4) incremental costs of removing the ventilation stack at its Humboldt Bay plant while spent fuel continued to be stored in the spent fuel pool; (5) evaluation of Private Fuel Storage (PFS) off-site storage options for both plants; and (6) internal and external legal costs related to the activities contained in the other categories.

*Id.* at 180. The Government did not dispute the amount of damages in each category, but continued to dispute PG & E's entitlement to those damages. *Id.* Indeed the Government "acknowledge[d] that PG & E [was] entitled to recover approximately $82 million of its approximately $92 million in damages claims on remand." *Id.* Specifically, under the 1987 ACR, the Government acknowledged that "PG & E [was] entitled to recover on remand the following costs: (1) Humboldt Bay SAFSTOR costs from 2000-2004, in the amount of $38,678,000; (2) Humboldt Bay ISFSI costs in the amount of $7,945,000; (3) Diablo Canyon ISFSI costs in the amount of $31,734,000; (4) Diablo Canyon temporary rack costs in the amount of

$2,663,807; and (5) Diablo Canyon Storage Options study costs in the amount of $1,451,091." *Id.* The trial court found that PG & E would not have incurred these reasonably foreseeable costs but for the Government's breach. *Id.* at 182. The trial court also found that the record supported these amounts with reasonable certainty. *Id.*

On remand, the trial court focused on the disputed costs, i.e., Humboldt Bay SAFSTOR costs in 1999, Humboldt Bay ISFSI costs for Greater Than Class C waste ("GTCC"), evaluation of PFS off-site storage, costs associated with stack removal, as well as internal and external legal costs. *Id.* at 182-203. With respect to the 1999 costs at Humboldt Bay, the trial court determined that the Government's partial breach caused PG & E to incur $4,744,000 in SAFSTOR costs. *Id.* at 183-86. The trial court then offset this amount by the amount PG & E would have paid to exchange its 1999 allocation for an allocation right in the 1998 priority queue. After this offset, the trial court awarded $4,044,000 for the Humboldt Bay SAFSTOR costs in 1999. *Id.* at 188-89.

Concerning the Humboldt Bay ISFSI costs for GTCC, the trial court, consistent with this court's decision in *Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008), awarded PG & E the full amount of damages, totaling $9,534,000 which included $1,589,000 for the costs associated with storing the GTCC. *Id.* at 193. The trial court specifically found that it was "more likely than not" that DOE would have collected the GTCC when it collected the spent nuclear fuel ("SNF"). *Id.* Regarding the PFS, the trial court determined: "Based on a preponderance of the credible evidence . . . the costs plaintiff incurred for the evaluation of the off-site storage options were both caused by the government's partial breach of the Standard Contract and foreseeable as the

natural and probable result of the government's partial breach." *Id.* at 196-97. Thus, PG & E received an award of $889,517 in damages. *Id.*

The trial court upheld its previous denial of the stack removal costs because the "more persuasive testimony" supported the finding that PG & E would have removed the ventilation stacks for safety reasons. *Id.* at 197-98. Therefore, the application of the 1987 ACR did not impact this earlier finding. *Id.* Finally, the trial court determined that the mandate from this court and the statute of limitations barred the claim for internal and external legal costs because this claim could have been presented at the initial trial but PG & E waited to present this claim for the first time on remand. *Id.* at 199-202.

After totaling the damages award, the trial court set the amount for PG & E at $89,004,415. *Id.* at 204. The Government timely filed its appeal of the trial court's decision. On appeal, the Government contends that the earlier mandate barred the trial court's award of damages for the PFS and the Humboldt Bay SAFSTOR 1999 costs based on an exchanges model. As such, the Government appeals $4,933,517 of the trial court's damages award. This court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.

This court reviews an interpretation of its own mandate without deference. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950-51 (Fed. Cir. 1997). "Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate." *Id.* at 951 (internal citations omitted) (citing *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 767 (9th Cir.1987) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)). This court has also stated that "it may be appropriate in

some circumstances for a court to revisit an issue that would otherwise be deemed waived and beyond the scope of an appellate mandate." *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001).

Further, this court reviews the trial court's legal conclusions without deference, *Yankee Atomic*, 536 F.3d at 1272, and its factual findings for clear error, *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). These factual findings include "the general type of damages to be awarded . . . , their appropriateness . . . , and rates used to calculate them . . . ," *Home Savings of Am. v. United States*, 399 F.3d 1341, 1347 (Fed. Cir. 2005). "A finding may be held clearly erroneous when . . . the appellate court is left with a definite and firm conviction that a mistake has been committed." 422 F.3d at 1373 (quoting *In re Mark Indus.*, 751 F.2d 1219, 1222-23 (Fed. Cir. 1984)). This court provides the trial court with broad discretion, "subject to certain controlling principles," in determining an appropriate quantum of damages. *Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1382 (Fed. Cir. 2004) (citing *Ferguson Beauregard v. Mega Sys.*, 350 F.3d 1327, 1345 (Fed. Cir. 2003)).

## III.

The Government contends that the trial court erred by interpreting this court's mandate to allow for reconsideration of PG & E's claims for PFS damages and the 1999 Humboldt Bay SAFSTOR damages. In the original trial, the Court of Federal Claims found that PG & E entered into PFS "in the ordinary course of business, while it continued to be possible that DOE would perform the Standard Contract . . ." and this venture was "highly speculative and uncertain." *Pac. Gas & Elec. Co. v. United States*, 73 Fed. Cl. 333, 430 (2006). Finding the

facts similar to those presented in *Indiana Michigan*, the trial court determined PG & E was not entitled to recover these costs because they "were not foreseeable by the government at the time of the parties' contracting, and were not the foreseeable result of the government's failure to begin collecting the utilities' spent fuel by January 31, 1998." *Id.* (citing *Ind. Mich.*, 422 F.3d at 1373).

Again, this court changed the time to begin assessment of the Government's partial breach. This change gave the trial court "the opportunity to calculate the damages owed to PG & E for DOE's partial breach of the Standard Contract." 536 F.3d at 1292. As such, the mandate of this court required the trial court to reconsider the damages presented during the initial trial in view of the 1987 ACR. The 1987 ACR "provide[d] the best available pre-breach snapshot of both parties' intentions for an acceptance rate" and "contemplated full and timely performance." *Id.* Within this framework, the trial court enjoyed considerable discretion to perform anew a causation analysis.

Based on this instruction, the trial court properly undertook the task of reconsidering PG & E's mitigation efforts. This task included another examination of issues properly before the court in the original trial, but, of course, did not extend to damages sought for the first time on remand, e.g., the internal and external legal costs. Within this general procedural setting, this court observes first that the issue of PFS off-site storage was properly before the trial court in the first trial. Moreover, nothing in this court's 2008 decision considered, let alone adopted, the trial court's earlier analysis with regard to PFS. Thus, the trial court retained full discretion to revisit and reconsider the PFS issue. "For while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Engel Indus., Inc.*

*v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999) (internal citations omitted) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939); citing *Laitram*, 115 F.3d at 951)). Further, this court noted that "[w]e, of course, remain mindful that the interpretation of the scope of a court's mandate may be uncertain and caution that both the letter and the spirit of the mandate must be considered." 166 F.3d at 1383 (internal citations omitted). This court determines that the trial court's interpretation of the mandate concerning the evaluation of PFS off-site storage mitigation damages was within the letter and spirit of the mandate. To hold otherwise would run the risk of not properly allowing for reconsideration of the mitigation damages sought, and deemed proven by the trial court, and PG & E would not be made whole.

For these reasons, this court affirms the trial court's determination that the damages claim for evaluation of off-site PFS storage was within this court's mandate.

## IV.

Because the trial court enjoyed the discretion to rehear the PFS issue on remand, this court reviews the damages awarded in that category for clear error. On remand, the trial court found that PG & E's duty to mitigate arose before 1998 when the Government breached the Standard Contract and that 1994 was the "latest possible date for the utility's duty to mitigate, not the earliest." 92 Fed. Cl. at 195 (citing *Ind. Mich.*, 422 F.3d at 1375; quoting *Yankee Atomic*, 536 F.3d at 1275). The trial court determined it was likely PG & E developed a reasonable belief as early as 1988 that DOE would not perform according to the timeline recited by the Standard Contract. *Id.* (quoting 536 F.3d at 1291 (stating that "in its June 1988 report, DOE explained that the linkage provisions made 'operations and waste acceptance at a

DOE facility significantly before 2003 unlikely'"). As such, the trial court properly determined that the statute of limitations began to run on January 31, 1998. Further, these costs could be awarded even though the costs were incurred more than six years before because PG & E incurred these costs after it developed a reasonable belief that the Government would not timely perform. *Id.*

The trial court accurately stated the question as "[would] PG & E . . . have been more likely than not to explore off-site storage in 1987." *Id.* at 196. As such, the trial court determined that, in a non-breach world, PG & E would not have explored PFS in 1987 when the parties still expected the Government to perform. Therefore, the record showed that the trial court's pre-remand finding that PG & E explored PFS "in the early 1990s in the ordinary course of business" could not stand. By the early 1990's PG & E no longer expected timely performance by the Government. *Id.* Thus, in the early 1990's PG & E already justifiably foresaw that the Government would not perform. The record also showed that PG & E had ample justification to prepare for the impending and foreseeable breach. The trial court determined that the "loss" caused by the Government was PG & E's "continued need to store its spent fuel in the absence of government performance under the parties' Standard Contract." *Id.* at 197. Accordingly PG & E was "not precluded from recovery to the extent that it has made reasonable but unsuccessful efforts to avoid loss." *Id.* at 196-97 (internal citations omitted) (citing *Ind. Mich.*, 422 F.3d at 1375 (quoting Restatement (Second) of Contracts § 350(2) (1981)); *Yankee Atomic*, 536 F.3d at 1276).

For these reasons and based on the "preponderance of the credible evidence," the trial court determined that the Government's partial breach caused these foreseeable PFS costs. *Id.* at 195, 197. As this court previously

determined and as properly noted by the trial court, PG & E is not precluded from recovering these damages because its mitigation efforts were unsuccessful. *See Ind. Mich.*, 422 F.3d at 1375; *Yankee Atomic*, 536 F.3d at 1276.

In *Indiana Michigan*, this court stated that "[m]itigation is appropriate where a reasonable person, in light of the known facts and circumstances, would have taken steps to avoid damage." 422 F.3d at 1375 (citing *Robinson v. United States*, 305 F.3d 1330, 1334 (Fed. Cir. 2002) (citing Restatement (Second) of Contracts § 350 cmt. B (1981))). This court determined that a utility must "prove foreseeability, causation, and reasonableness," to support a claim for pre-breach mitigation damages. *Id.* at 1376. In the present action, the record amply supports the trial court's findings that off-site PFS storage costs were foreseeable at the time of contract, that the Government's partial breach of the Standard Contract caused PG & E to undertake these expenses, and that these costs were reasonable in view of the facts known to PG & E at that time.

In *Dairyland Power Cooperative v. United States*, this court acknowledged that a utility could receive damages for the cost of investing in a PFS to the extent that it was done for mitigation purposes. 645 F.3d 1363, 1375 (Fed. Cir. 2011). In *Dairyland*, this court determined that the utility "had the burden to prove how much, if any, of its PFS investment was speculative as opposed to mitigation-oriented." *Id.* at 1376. Unlike *Dairyland*, this action is not speculative because PG & E and the Government agreed to the total costs at issue, presented testimony and evidence that allowed these costs to be determined to a reasonable certainty, and the trial court made its determination to award damages "[b]ased on a preponderance of the credible evidence." 92 Fed. Cl. at 196-97.

Additionally, "[f]oreseeability is a question of fact reviewed for clear error." *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001). As established by *State Industries, Inc. v. Mor-Flo Industries, Inc.*,

> The weighing of conflicting evidence is a task within the special province of the trial judge who, having heard the evidence, is in a better position than we to evaluate it. Particularly where, as here:
> a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

948 F.2d 1573, 1577 (Fed. Cir. 1991) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)). In this case, the record contains plausible evidence to support the trial court's determination to award damages for PG & E's evaluation of off-site PFS storage. For instance, PG & E's management testified that they originally believed this project to be "the only viable alternative" to DOE performance and that on-site storage at Humboldt Bay was not technologically feasible in the early-1990s because of the seismic activity in that part of California. J.A. 27. As such, the record supports the trial court's finding that PG & E undertook PFS off-site storage to mitigate the impending and foreseeable breach and this court finds no error in the corresponding damages awarded.

## V.

This court now turns its attention to the trial court's award of costs for PG & E's 1999 Humboldt Bay SAFSTOR damages based on an exchanges model. Dur-

ing the initial trial, PG & E asserted it would have used the exchanges provision to receive allocation rights in the priority queue for 1998 so that its SNF would have been removed before the impending SAFSTOR costs in 1999 in a non-breach world. Therefore, PG & E sought the costs associated with this mitigation effort. 92 Fed. Cl. at 183. The trial court was not persuaded that the exchanges provision would have been used to reduce SNF storage costs and granted the Government's motion in limine to exclude the expert testimony offered by PG & E. 73 Fed. Cl. at 413, 435-36. The trial court reached this conclusion, in part, because the expert could not provide helpful testimony concerning the rate of acceptance. *Id.* During the first appeal, this court found it was within the trial court's discretion to grant this motion in limine. This court did not, however, address the exchanges model and certainly did not brand that model as "speculative." To the contrary, this court noted that the exchanges model had appeared in other cases before the trial court. 536 F.3d at 1292 (noting no difference between the testimony presented in the earlier trial and testimony offered in *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 299-303 (2006)).

On remand, the trial court stated that the 1987 ACR changed the nature of the parties' "conduct and intentions." 92 Fed. Cl. at 183-84. From that time perspective, the exchanges model no longer seemed speculative, but was instead "helpful to the court in its resolution of this case on remand." *Id.*; *see also Dairyland*, 645 F.3d at 1371 ("The question of whether Dairyland's model is or is not too speculative to be reliable is, again, a fact issue on which we owe deference to the Court of Federal Claims."). The trial court allowed the presentation of new evidence and testimony based on the 1987 ACR, including testimony by PG & E's expert concerning the exchanges

model. The trial court then found that "Plaintiff established by a preponderance of the evidence" that exchanges would have been used and that the Government's partial breach caused PG & E to incur the 1999 SAFSTOR costs for Humboldt Bay. 92 Fed. Cl. at 185-86.

"Absent contrary instructions, a remand for reconsideration leaves the precise manner of reconsideration—whether on the existing record or with additional testimony or other evidence—to the sound discretion of the trial court." *State Indus.*, 948 F.2d at 1577 (citing *Adelson v. United States*, 782 F.2d 1010, 1012 (Fed. Cir. 1986)). Because this court instructed the trial court to undertake a recalculation of damages consistent with the 1987 ACR, the trial court enjoyed broad discretion to allow the testimony of PG & E's expert on the exchanges provision of the Standard Contract. Indeed this court has allowed the use of the exchanges model to show likely occurrences in the non-breach world. *See, e.g.*, *Dairyland*, 645 F.3d at 1369 (finding no error in the trial court's adoption of the utility's exchanges model in its damages analysis). In sum, this court discerns no abuse of discretion in the trial court's allowance of testimony by an expert concerning an exchanges model.

## VI.

This court now reviews the grant of the costs awarded for the 1999 Humboldt Bay SAFSTOR damages on remand for clear error. Based on PG & E's expert testimony that a market for exchanges would develop and other evidence, the trial court determined:

> Under the 1987 ACR acceptance rates, PG & E had sufficient allocations in years 1998 and 1999 that all of its Humboldt Bay SNF would have been picked up by DOE no later than 1999. . . . Through the use of exchanges, PG & E,

> to a reasonable certainty in the nonbreach world, would have arranged for all of its SNF to be picked up in 1998, thereby avoiding SAFSTOR costs in 1999.

92 Fed. Cl. at 185. The trial court found that PG & E "established by a preponderance of the evidence that it would have used the exchanges provision" to avoid the 1999 SAFSTOR costs. *Id.* at 185-86. The trial court offset the SAFSTOR costs by the amount PG & E would have paid to receive an earlier allocation right, and awarded $4,044,000 in costs for damages for the 1999 Humboldt Bay SAFSTOR. *Id.* at 186-89.

Under this court's decision in *Yankee Atomic*, damages for partial breach of contract can only be awarded if the record shows that the breach caused the damages. 536 F.3d at 1273. As such, the trial court has the responsibility to determine likely events in a non-breach world to ensure that the breach does not receive responsibility for events that would have transpired anyway. The trial court determined that PG & E "established by a preponderance of the evidence" that the 1999 Humboldt Bay SAFSTOR damages were caused by the Government's breach of contract. 92 Fed. Cl. at 185-86. The trial court cited supporting evidence that PG & E would have been "incentivized" to participate in the market for exchanges because an earlier allocation right would have allowed it to avoid almost $5 million in SAFSTOR costs and the utility was obligated to do so by an agreement requiring it to "make efforts" to receive an earlier allocation right. *Id.* at 186. Specifically, the record includes testimony from a former executive of PG & E supporting the trial court's determination that the utility would have participated in the market for exchanges and PG & E would have been "incentivized" to do so. *See* J.A. 1590, 1937 ("Licensee further agrees to reasonably pursue the highest DOE

priority for the removal of the Humboldt Bay . . . spent fuel assemblies."). By the agreement between PG & E, it was required to "ship the spent fuel assemblies presently stored at the Humboldt Bay Power Plant 3 to the [DOE] as soon as the DOE has a repository . . . capable of receiving the spent fuel assemblies under the [Standard Contract] . . . ." J.A. 1937. The amount of damages sought by PG & E in costs as SAFSTOR damages for 1999 was not in dispute; the parties disputed the entitlement of PG & E to said damages and the amount of offset that the trial court should apply. 92 Fed. Cl. at 188. Under the exchanges model, PG & E's expert testified that the utility would have expended "from $400,000 to $1.5 million, with $700,000 representing the exchange costs under the base case analysis" and the Government argued that the testimony supported an estimate ranging from $700,000 to $1 million. *Id.* The trial court offset the award of these SAFSTOR costs by $700,000, which represented PG & E's exchange costs. *Id.* To make this determination, the trial court credited testimony concerning the nuclear utility industry and found it unlikely that PG & E would have received an earlier allocation right. *Id.* The record supports the trial court's award of damages for PG & E's 1999 Humboldt Bay SAFSTOR costs and this court discerns no error in the trial court's determination concerning the entitlement and offset applied.

## VII.

This court hereby affirms the trial court's holding that the mandate did not bar the trial court's reconsideration of PG & E's claims for PFS and the 1999 Humboldt Bay SAFSTOR mitigation damages. This court affirms the damages awarded for PG & E's PFS off-site storage and Humboldt Bay SAFSTOR 1999 mitigation damages.

**AFFIRMED.**