# United States Court of Appeals for the Federal Circuit

---

**YANKEE ATOMIC ELECTRIC COMPANY,**
*Plaintiff-Cross Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---------------------------------------------------------------------

**MAINE YANKEE ATOMIC POWER COMPANY,**

*Plaintiff-Cross Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---------------------------------------------------------------------

**CONNECTICUT YANKEE ATOMIC POWER COMPANY,**

*Plaintiff-Cross Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---

2011-5020, -5021, -5022, -5027, -5028, -5029

---

Appeals from the United States Court of Federal Claims in Case No. 98-CV-126, 98-CV-474, 98-CV-154, Senior Judge James F. Merow.

———————————

Decided: May 18, 2012

———————————

CATHERINE E. STETSON, Hogan Lovells US LLP, of Washington, DC, argued for plaintiffs-cross appellants. With her on the brief was DOMINIC F. PERELLA. Of counsel on the brief was JERRY STOUCK, Greenberg Traurig, LLP, of Washington, DC.

HAROLD D. LESTER, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, MARIAN E. SULLIVAN, Senior Trial Counsel, ANDREW P. AVERBACH, Senior Trial Counsel, ANTHONY W. MOSES, SETH W. GREENE and SCOTT D. SLATER, Trial Attorneys. Of counsel on the brief was JANE K. TAYLOR, Office of General Counsel, United States Department of Energy, of Washington, DC.

———————————

Before RADER, *Chief Judge*, LOURIE and MOORE, *Circuit Judges.*

RADER, *Chief Judge*.

This consolidated appeal is the latest manifestation of the numerous contract disputes arising from the Government's failure to accept and dispose of radioactive waste from the nation's nuclear utilities. Specifically, the appeal flows from this court's decision in *Yankee Atomic*

*Electric Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008), which reversed the United States Court of Federal Claims' initial damages determination, and remanded for a calculation of damages according to the rate at which the Government was contractually obligated to accept the utilities' waste.

Yankee Atomic Electric Company (Yankee Atomic), Maine Yankee Atomic Power Company (Maine Yankee), and Connecticut Yankee Atomic Power Company (Connecticut Yankee) (collectively, the Yankees) originally brought this action seeking damages to compensate for the cost of storing spent nuclear fuel (SNF) and high-level radioactive waste (HLW) beyond the time that the Government promised by contract to begin storing that waste in a permanent and secure repository. On remand, the trial court correctly calculated damages for dry storage construction costs, deferred costs of loading waste to the Department of Energy (DOE), and reracking costs. However, the trial court erred in denying Yankee Atomic's claim for a portion of its wet pool storage costs and Nuclear Regulatory Commission (NRC) fees. Unlike *Consolidated Edison Co. of N.Y. v. United States*, __ F.3d __, 2012 WL 1284402 (Fed. Cir. Apr. 16, 2012), this case does not include a claim for NRC fees that allegedly increased due to DOE's breach. Rather, the plaintiff here claims that no NRC fees would have been incurred by the inactive plant if the SNF had been removed in a timely manner pursuant to the Standard Contract. *See Yankee Atomic Power Co. v. United States*, 94 Fed. Cl. 678, 725 (2010).

Therefore, this court affirms-in-part and reverses-in-part the trial court's damages award as recited below.

I.

This court has often addressed the Standard Contract between the Government and nuclear utilities, and the Government's liability for a partial breach. *See Me. Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337-40 (Fed. Cir. 2000); *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 250-259 (2006) (*Yankee I*). However, the history of this case is necessary on this appeal from an earlier remand decision.

Starting in August 2004, the trial court held a seven-week trial on damages. *Yankee I*, 73 Fed. Cl. at 251. Yankee Atomic received as damages $32,863,366 to compensate for the cost of building dry storage (i.e., an independent spent fuel storage installation (ISFSI)); Connecticut Yankee received $8,350,893 for reracking its wet pool to increase storage capacity and $25,803,986 for ISFSI construction; and Maine Yankee received $10,069,018 for reracking costs and $65,705,536 for ISFSI construction expenses. *Id.* at 326. During the *Yankee I* trial, the Government argued that Greater Than Class C radioactive waste (GTCC) was not covered by the Standard Contract. According to the Government, the Yankees would have been required to build dry storage for GTCC in the non-breach world, thus incurring ISFSI costs (in whole or in part). *Id.* at 312-15. The trial court rejected this argument. *Id.*

On appeal, this court accepted the trial court's "findings on foreseeability, reasonable certainty and the use of the substantial causal factor standard" for causation purposes, as well as the determination that an award of Nuclear Waste Fund fees should be denied as premature. *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1272-4 (Fed. Cir. 2008) (*Yankee II*). However, this court noted that the trial court made its causation analysis

"without formally interpreting the Standard Contract" and did not fulfill its "obligation" to "apply [the 1987 annual capacity report] rate in determining the substantial cause of the Yankees' costs." *Id.* at 1274. For that reason, this court remanded for application of the 1987 annual capacity report (ACR) rate to the damages claimed by the parties. The 1987 ACR set forth the projected annual waste receiving capacity for DOE and the annual acceptance ranking relating to DOE contracts for the disposal of SNF and/or HLW. *Pac. Gas & Elec. Co. v. United States*, 73 Fed. Cl. 333, 399-400 (2006).

On remand, the trial court accepted the fuel exchange model presented by the Yankees' expert, and concluded that the Yankees would not have built dry storage; Maine Yankee and Connecticut Yankee also, according to the trial court, would not have reracked their storage pools under the 1987 ACR rate. *Yankee Atomic Power Co. v. United States*, 94 Fed. Cl. 678, 685-86 (2010) (*Yankee III*). The trial court found that, using fuel exchanges, the Yankees would have emptied their wet storage facilities in the non-breach world within the first ten years of DOE's performance. *Id.* at 688-93.

The trial court also addressed certain "matters beyond the remand and mandate." *Id.* at 717-19. Each side claimed the other presented issues beyond the scope of the remand. *Id.* at 719-20. The Yankees claimed that the Government's argument to include GTCC pickup in the 1987 ACR queue was "of new cloth" and beyond the scope of the mandate. *Id.* at 719, 721. The Government responded that the Yankees' claims for the cost of transferring SNF from their wet pools to DOE (including crane upgrades) were beyond the scope of the mandate. *Id.* at 720, 726. The Government also objected to Yankee Atomic's claim for the costs to operate and maintain (O & M) its wet pool for 2000 and 2001, as well as its NRC fees.

The trial court found that the Government's argument to include GTCC into the 1987 ACR queue was not raised during the *Yankee I* trial and was thus barred. *Id.* at 722. However, the trial court noted that even if the issue was not barred, "removal of GTCC by the date of at least the last SNF removal" would likely have occurred. *Id.* at 723. Moreover "the GTCC generated from shut-down reactors was statistically insignificant and would not have had an appreciable affect [sic] on the SNF queue." *Id.* at 724. Finally "costs associated with dry storage and reracking would not have been incurred due to the presence of GTCC." *Id.* at 725.

Another remand issue involved the costs of future loading to DOE and crane upgrades. The Yankees had voluntarily deducted these costs from the damages in *Yankee I* under the belief these costs were avoided costs and thus not recoverable. On remand, the trial court concluded that intervening Federal Circuit precedent indicated these were actually deferred costs, not avoided costs, and thus should not be deducted from the Yankees' damages. *Yankee III*, 94 Fed. Cl. at 729-30.

Lastly, the trial court rejected Yankee Atomic's attempt to resurrect its claims for costs relating to wet storage and NRC fees for the years 2000 and 2001. Yankee Atomic unsuccessfully sought these costs during *Yankee I*, but did not appeal the costs in *Yankee II*. *Yankee III*, 94 Fed. Cl. at 725. The trial court found that Yankee Atomic could not "attack the original trial decision" during the remand because it had not appealed the issue. *Id.* The trial court found in the alternative that Yankee Atomic was entitled to an additional $16,709,742 for wet pool O & M costs and $312,000 in NRC fees. *Id.* at 726.

On appeal, the Government complains that the trial court erroneously based its damages calculations upon estimates and speculation. Specifically, the Government claims that the trial court errantly relied on an exchanges model which was not grounded in fact and did not account for DOE's discretion to reject fuel exchange requests. The Government likewise appeals the trial court's interpretation of the *Yankee II* remand as allowing the Yankees to claim damages conceded in the original trial yet precluding the Government from asserting that the Yankees must establish how GTCC would impact the SNF acceptance queue. The Government also appealed this court's prior rulings regarding the appropriate rate of SNF and HLW acceptance under the Standard Contract and the status of GTCC as HWL under the Standard Contract. *See Carolina Power & Light Co. v. United States*, 573 F.3d 1271 (Fed. Cir. 2009); *Yankee II*, 536 F.3d at 1278-79. The Government recognizes that its arguments conflict with binding precedent and appealed the issues solely to preserve its right to seek en banc review. In the counter appeal, the Yankees raise just one issue, requesting that this court reverse the trial court's exclusion of Yankee Atomic's wet pool O & M costs and NRC fees.

## II.

This court reviews the trial court's legal conclusions without deference, *Yankee II*, 536 F.3d at 1272, and its factual findings for clear error, *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Factual findings include "the general type of damages to be awarded . . . , their appropriateness . . . , and rates used to calculate them . . . ." *Home Sav. of Am. v. United States*, 399 F.3d 1341, 1347 (Fed. Cir. 2005). The trial court is given broad discretion, "subject to certain controlling principles," in determining an appropriate quantum of damages. *Hi-Shear Tech. Corp. v. United States*, 356

F.3d 1372, 1382 (Fed. Cir. 2004) (citing *Ferguson Beaure-gard v. Mega Sys. LLC*, 350 F.3d 1327, 1345 (Fed. Cir. 2003)). This court reviews an interpretation of its own mandate without deference. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950-51 (Fed. Cir. 1997).

## III.

This court recently affirmed a trial court's use of an exchanges model when calculating damages for the storage of SNF in *Dairyland Power Cooperative v. United States*, 645 F.3d 1363, 1369 (Fed. Cir. 2011). In *Dairyland*, the trial court reviewed legal arguments and testimony (both fact and expert) and awarded damages based on an exchanges model because it determined that the utility "was entitled to damages for its storage of SNF." 645 F.3d at 1371. This court reviewed the trial court's determination and affirmed the trial court's damages award based on an exchanges model because "[t]he question of whether Dairyland's model is or is not too speculative to be reliable is, again, a fact issue on which we owe deference to the Court of Federal Claims." *Id.* In *Dairyland*, this court found no error in the trial court's determination because "it appear[ed] to have been grounded in proper weighing of the evidence." *Id.* at 1370.

Similar deference must be given in this case. The Government has recycled the arguments already rejected in *Dairyland*. In *Dairyland*, the Government asserted that the utility "did not identify the specific [other] utilities it would have obtained year-one delivery commitment schedules from," that local communities might have opposed the exchanges, and that the DOE had discretion to reject proposed fuel exchanges. 645 F.3d at 1369. The Government has raised the same arguments in the instant case. *See* Appellant's Brief 28-35. Just as this court found in *Dairyland*, the Government did not identify any

record evidence to support a finding that the trial court committed clear error in adopting an exchanges model.

The trial court previously determined that in the non-breach world, DOE would not have adopted an oldest fuel first ("OFF") procedure. Rather, fuel exchanges would have occurred. *Yankee III*, 94 Fed. Cl. at 690. The Government also admitted that exchanges would have occurred "at some point, and in some fashion." *Id.* The trial court made the following conclusion concerning the exchanges model:

> Compelling financial incentives, coupled with contractual provision for exchanges, which under full government performance, must be assumed to be used, and the history of utilities creating vigorous markets in analogous circumstances, all lead the court to conclude that it is plausible, and more likely than not, the market [the damages expert] presented would have developed, and to the extent he opined.

*Id.* at 692. The trial court noted that "[t]he government did not suggest that [the damages expert] was selective in his data, that he failed to gather appropriate data, or that his analysis was other than robust." *Id.* As such, the trial court "[c]redit[ed] preponderant evidence" and concluded that the Yankees would not have built dry fuel storage in the non-breach world. *Id.* at 693.

DOE's discretion to approve exchanges does not alter this analysis. "While considerations such as DOE's discretion to approve such transactions and worries about the presence of failed fuel are certainly relevant, they are not overriding concerns sufficient to make the court's finding clearly erroneous." *Dairyland*, 645 F.3d at 1371. The trial court dedicated over twenty pages of analysis to the exchanges model, including detailed review of the

model, the damages expert, and other relevant testimony. *Yankee III*, 94 Fed. Cl. at 687-708. The trial court concluded that DOE's discretion "would not have been exercised arbitrarily and capriciously but consistent with the obligation of good faith and fair dealing," and thus DOE discretion would not have invalidated the Yankees' fuel-out dates determined under the exchanges model. *Id.* at 700. As such, this court affirms the trial court's factual determination and award of damages based on an exchanges model.

IV.

This court next turns to the issue of whether the trial court erred in interpreting the remand ordered in *Yankee II*. As this court has previously stated, "[u]pon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate." *Laitram Corp.*, 115 F.3d at 951 (citing *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 767 (9th Cir. 1987)). However, the trial court should consider "both the letter and the spirit of the mandate . . . ." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). Thus, "it may be appropriate in some circumstances for a court to revisit an issue that would otherwise be deemed waived and beyond the scope of an appellate mandate." *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001). This may occur when "there has been a substantial change in the evidence," *id.*, or where an intervening decision has changed the law, *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1359 (Fed. Cir. 2008) ("An appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of subsequent factual discoveries or changes in the law." (quoting *Barrof v. Falck*, 11 F.3d 729, 731 (7th Cir. 1993))). *Cf. Gould, Inc. v. United States*, 67 F.3d 925, 930

(Fed. Cir. 1995) (law-of-the-case doctrine does not apply where "controlling authority has since made a contrary decision of the law applicable to the issues").

With respect to the Yankees' claims for future loading costs and the costs of crane upgrades, the trial court correctly noted that the intervening precedent of *Carolina Power*, *Indiana Michigan*, and *Yankee II* changed the legal landscape for the calculation of damages on these issues. When the *Yankee I* trial occurred, future loading costs or costs associated with the transfer of fuel to DOE were considered avoided costs, and thus not recoverable by SNF plaintiffs. The Yankees agreed to reduce their breach world ISFSI costs by the estimated future cost of transferring SNF from their wet pools to DOE in the non-breach world, on the ground these expenses were avoided because of the breach. *Yankee I*, 73 Fed. Cl. at 322-23. The subsequent change in case law allowed plaintiffs to recover these costs. *See Carolina Power*, 573 F.3d at 1277.

When the trial court received this consolidated appeal on remand, it correctly allowed the Yankees to retract their initial voluntary deductions for these costs and reinstate these amounts as damages. The Government should not be allowed the unwarranted benefit of the Yankees' voluntary deductions when those deductions would not have been necessary under subsequent precedent. As such, this court affirms the trial court's determination regarding the deferred costs for loading waste to DOE.

This court also affirms the trial court's finding that the Government could not assert that GTCC must be included in the SNF acceptance queue calculations. In *Yankee II*, this court held that DOE's obligations under the Standard Contract apply to SNF and HLW, and

placed GTCC within the definition of HLW. 536 F.3d at 1277. On remand, the Government argued that acceptance of GTCC would affect DOE's waste acceptance queue, potentially changing the Yankees' fuel-out dates. *Id.* at 721-22. The trial court correctly concluded that the Government was barred from asserting this position because it was not presented at trial. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009) (applying mandate principles to defenses, holding that the mandate rule barred the trial court from considering a newly raised anticipation defense on remand, and finding error when the trial court went beyond the mandate).

During the *Yankee I* trial, the Government's only argument relating to GTCC was that it had no obligation to remove GTCC under the Standard Contract because GTCC was not HLW. During the *Yankee I* trial, the Government could have argued in the alternative that removal of GTCC, if required, would have changed DOE's waste acceptance queue. Without this alternative argument, the trial court need not now rewind the clock to pursue a new litigation approach. Unlike the Yankees' costs for loading to DOE discussed above, the Government has not identified an exception to the mandate rule such as a change in the law or manifest injustice which would justify the requested departure from the norm. As such, this court affirms the trial court's determination on this point.

In holding that the Government could not raise its GTCC argument during the remand, this court does not address the trial court's alternative finding that "the GTCC generated from shut-down reactors was statistically insignificant," and that "costs associated with dry storage and reracking would not have been incurred due to the presence of GTCC." *Yankee III*, 94 Fed. Cl. 724-25.

As the Government was precluded from raising this argument, judicial restraint counsels against making any binding findings on this point. Thus, as stated in *Yankee II*, "the proper valuation of GTCC waste disposal remains open for adjudication in future proceedings once the costs of this operation are fully realized and understood." 536 F.3d at 1278.

## V.

Lastly, this court considers whether the trial court erred by excluding some of the costs Yankee Atomic incurred to operate its wet storage pool. In *Pacific Gas & Electric Co. v. United States*, this court affirmed a trial court's interpretation of a similar mandate to that ordered in *Yankee II*: reconsideration of the damages presented during the initial trial in view of the 1987 ACR. 668 F.3d 1346, 1351 (Fed. Cir. 2012). This court found that the trial court was allowed to "revisit and reconsider" an issue that was before the trial court during the original trial, noting that "while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Id.* (quoting *Engel Indus. Inc.*, 166 F.3d at 1382). A contrary holding would "run the risk of not properly allowing for reconsideration of the mitigation damages sought, and deemed proven by the trial court," and thus plaintiffs would not be made whole. *Id.*

In like fashion, Yankee Atomic claimed its wet storage pool costs initially during the *Yankee I* trial. The trial court denied these costs on the ground that Yankee Atomic's wet pool would not have been emptied by the 1999 fuel-out date. *Yankee I*, 73 Fed. Cl. at 306-07. On remand, the trial court found as a matter of fact that "in the hypothetical world of full government performance at the 1987 ACR rates . . . all SNF [would be] removed from Yankee Atomic's wet pool by the end of 1999." *Id.* at 694.

Since its pool would have been empty in the non-breach world by 1999 under this new calculation, Yankee Atomic reasserted its claim for O & M costs for 2000 and 2001 as well as its NRC fees. *Id.* at 725.

The trial court erroneously stated that the scope of the remand in *Yankee II* was to reexamine the causation for "discrete costs previously awarded," and not to open the door for to additional costs. *Id.* at 726. This interpretation is too narrow. The remand was ordered "[b]ecause the Court of Federal Claims did not assess damages according to the rate at which the Government was contractually obligated to accept the utilities' waste." *Yankee II*, 536 F.3d at 1271. The remand was not limited to a reexamination of costs previously awarded, and the trial court must consider both the letter and the spirit of this court's remand order. *Engel Indus., Inc.*, 166 F.3d at 1383.

Regardless of whether the trial court originally granted or denied Yankee Atomic's damages claims, once the trial court determined on remand that all SNF would have been removed from Yankee Atomic's wet storage pool by the end of 1999 under the 1987 ACR rates in the hypothetical world, the court was required to apply that finding to its prior damages calculations. Under the *Yankee II* remand, the trial court was free to "revisit and reconsider" issues raised at trial, particularly as its application of this court's mandate changed the factual predicate for its prior decision to deny Yankee Atomic's costs. Indeed this record demanded such attention to the implications of applying the 1987 ACR rates.

Unlike the Government's argument regarding GTCC, Yankee Atomic's claim for these costs was initially raised at trial. As such, this court reverses the trial court's denial of Yankee Atomic's wet storage pool costs and NRC

fees. The trial court wisely foresaw that this court could reverse its refusal to consider these costs. For this reason, the Court of Federal Claims found that Yankee Atomic had established these costs with reasonable certainty. Thus, this court need not remand for further damages calculations, but only for entry of judgment in an additional amount of $17,021,742.

## VI.

Yankee Atomic's claims for wet storage pool costs and NRC fees were within this court's mandate in *Yankee II*. As such, the trial court's denial of these costs is reversed. The remainder of the trial court's decision is affirmed. Judgment should be entered to award Yankee Atomic Electric Co. an additional $17,021,742.

**AFFIRMED-IN-PART AND REVERSED-IN-PART**

COSTS

Costs to Plaintiffs-Cross Appellants.