BRYSON, Circuit Judge,
concurring in part and dissenting in part.
I join the court’s opinion on all issues but one: the majority’s conclusion that payments to the Vermont Clean Energy Development Fund and the requirement to put up a visual barrier at the power plant were unforeseeable and therefore cannot be included in the calculation of ENVY’s damages.
With respect to ENVY’s payments into the Clean Energy Development Fund, I would uphold the trial court’s finding that it was reasonably foreseeable at the time of contract formation that a nuclear operator would be faced with expenses of that type if the government’s breach forced the operator to build a dry storage facility. The costs of dealing with state regulatory efforts were clearly foreseeable. While the precise identity of those expenses may not have been predictable, all that is required is that “the injury actually suffered must be one of a kind that the defendant had reason to foresee.” 11 Joseph M. Perillo, Corbin on Contracts § 56.7, at 108 (rev. ed.2005); see also Anchor Sav. Bank, FSB v. United States, 597 F.3d 1356, 1364 (Fed.Cir.2010); Citizens Fed. Bank v. United States, 474 F.3d 1314, 1321 (Fed.Cir.2007). The trial court reasonably found that the Clean Energy Development Fund payments met that test.
“Foreseeability is a question of fact reviewed for clear error.” Pac. Gas & Elec. Co. v. United States, 668 F.3d 1346, 1352 (Fed.Cir.2012), quoting Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348, 1355 (Fed.Cir.2001). The government has failed to show that the trial court’s findings on the issue of foreseeability were clearly erroneous. The majority accepts the government’s assertion that the payments in question were unforeseeable because the State’s regulatory efforts would likely have been preempted by federal law. But that is far from clear. As the majority itself points out, states are permitted certain regulatory powers over nuclear energy facilities if those powers are directed at non-safety issues, such as economic or other concerns. The majority relies on English v. General Electric Co. for the proposition that state law is preempted if it “ha[s] some direct and substantial effect on the decisions made by those who build or operate nuclear facilities concerning radiological safety levels.” 496 U.S. 72, 85, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). In fact, however, the Court in English concluded that even though claims for emotional distress stemming from whistleblowing activity relating to safety at a nuclear facility “may have some effect on these decisions,” the effect was “neither direct nor substantial enough to place petitioner’s claim in the pre-empt-ed field.” Id. Similarly, state tort law is not preempted for damages awards for radiation-based injuries — including punitive damages — even though the “prospect *1354 of compensatory and punitive damages for [these] injuries will undoubtedly affect nuclear employers’ primary decisions about radiological safety in the construction and operation of nuclear power facilities.” Id. at 86, 110 S.Ct. 2270; see Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 256, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).
As the Supreme Court cases cited by the majority demonstrate, in 1983 it was foreseeable to the government that a state would try to regulate aspects of nuclear power facilities. In fact, the government was intimátely involved in the litigation of nuclear power preemption cases, with varying degrees of success. See English v. General Electric Co., 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (United States as amicus); Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (same); Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm’n, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (same). Attempted state regulation of nuclear waste storage facilities was at that time— and continued to be for years — a contested area of overlapping state and federal regulation.[1] E.g., In re Indep. Spent Fuel Storage Installation, 501 N.W.2d 638, 648 (Minn.App.1993) (concluding that “proposed facility must be classified as a radioactive waste management facility [and] must obtain legislative authorization” pursuant to state law); cf. Citizens’ Util. Bd. v. Pub. Serv. Comm’n, 211 Wis.2d 537, 565 N.W.2d 554, 564 (App.1997) (approving state commission’s determination that environmental impact statement prepared for dry fuel storage was adequate).
Given such attempts to regulate nuclear power facilities by the states, it is reasonable to conclude that it was foreseeable that an injured party attempting to procure alternative storage for its SNF — and forced to do so quickly due to the government’s breach — would acquiesce in state demands, even demands that might be regarded as excessive. “The reasonably foreseeable consequences of a breach of contract are compensable, whether they were actually foreseen or not, or even if the criminal act of a third person intervened.” 24 Richard A. Lord, Williston on Contracts § 64:13, at 138-39 (4th ed.2002). Because the issue of foreseeability in this case is at least debatable, we should defer to the trial court’s findings.
Given the pressure — due to the government’s breach — on ENVY to build SNF storage facilities quickly, it was also foreseeable that ENVY would elect not to engage in prolonged, costly, and complex litigation with the State of Vermont over the preemption issue. See Restatement (Second) of Contracts § 351, cmt. c, illus. 9 (explaining that payment of settlement by injured party to avoid litigation with a third party is foreseeable and therefore recoverable); cf. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 122 (2d Cir.2010) (concluding that in light of exceptional circumstances, it was reasonable for the insured to act quickly to minimize damages, even if its actions were *1355 not in strict compliance with those recommended by the insurer).
In an analogous case, the Court of Federal Claims rejected a similar argument by the government, stating that it “simply cannot be the case that plaintiff should be required to mitigate the damages caused by defendant’s breach ..., be compelled to pursue that mitigation through the state legislature ..., and then in the final analysis be forced to absorb the economic cost of legislative mandates it had no power to avoid.” N. States Power Co. v. United States, 78 Fed.Cl. 449, 463, 464 (2007); see also Valladares v. DMJ, Inc., 110 Nev. 1291, 885 P.2d 580, 582 (1994) (“[I]t would be inequitable for [the injured party] to be forced to pay for the results of [the breaching party’s] extreme lack of diligence in completing the contract.”). In this setting, as in other similar instances involving the question of which party should bear the costs of mitigation, “the risks incident to [efforts to minimize losses from a breach] should be carried by the party whose wrongful conduct makes them necessary.” 11 Joseph M. Perillo, Corbin on Contracts § 57.16, at 849.
The same arguments apply with perhaps even greater force to the costs for constructing the visual barrier. The government’s preemption rationale is attenuated in that setting because it is beyond dispute that states are permitted to regulate certain environmental aspects of nuclear power plants as long as those aspects are unrelated to radiological safety. Silkwood, 464 U.S. at 249, 104 S.Ct. 615; N. States Power Co. v. Minnesota, 447 F.2d 1143, 1151 (8th Cir.1971) (explaining that Atomic Energy Act “does not impair State authority to regulate activities of [nuclear plant operators] for the manifold health, safety, and economic purposes other than radiation protection”); Pennsylvania v. Lockheed Martin Corp., 684 F.Supp.2d 564, 588 (M.D.Pa.2010) (state statute permitting recovery of cleanup costs for radioactive material does not “cause a direct or substantial effect on the decisions made by [operators of] nuclear facilities concerning radiological safety levels”); Me. Yankee Atomic Power Co. v. Bonsey, 107 F.Supp.2d 47, 54 (D.Me.2000) (“Nonradiological aspects of spent fuel storage, however, are still subject to some regulation by the states....”); Conn. Coal. Against Millstone v. Conn. Siting Council, 286 Conn. 57, 942 A.2d 345, 359 (2008) (state council’s findings with respect to factors such as “distance of [nuclear] facility from residential areas, the flood zone, and tidal and inland wetlands; the impact of the facility on groundwater; [and] the design of the facility” are not preempted by federal law).
Because a visual barrier cannot be said to relate to radiological safety concerns, it likely lies outside the zone of federal preemption. It is therefore foreseeable that a state would respond to a proposed dry storage facility by requiring the construction of a visual barrier for aesthetic reasons and that such a requirement would not be subject to challenge on preemption grounds. See Me. Yankee, 107 F.Supp.2d at 55 (state may insist that nuclear operator “comply with state requirements that do not impermissibly infringe on radiological, operational, construction, or safety issues, such as, for example, aesthetic landscaping requirements”).
I therefore respectfully dissent from the majority’s decision to reverse the trial court on those two disputed items of mitigation expenses.

. The State of Vermont, as amicus curiae, asserts that the government cannot raise its preemption argument because it failed to give notice of that argument to the State pursuant to 28 U.S.C. § 2403(b). Setting aside whether section 2403 applies to the Court of Federal Claims, the statute is directed to the court, not the government. Moreover, the preemption issue is not directly presented by this case; it is raised only indirectly, in support of the government's contention that in light of the preemption doctrine among other reasons, it would not have been foreseeable for a nuclear operator to have to make mitigation payments in response to state regulatory efforts.