#25772-rev & rem-DG

**2011 S.D. 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LITA ST. JOHN,                                        Plaintiff and Appellant,

v.

LINDA PETERSON, M.D.,                                Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

THOMAS L. SANNES
GORDON P. NIELSEN of
Delaney, Vander Linden,
 Delaney, Nielsen & Sannes, PC
Webster, South Dakota                    Attorneys for plaintiff
                                         and appellant.


REED RASMUSSEN of
Siegel, Barnett and Schutz, LLP
Aberdeen, South Dakota                   Attorneys for defendant
                                         and appellee.

\* \* \* \*

ARGUED ON MAY 25, 2011

OPINION FILED **09/14/11**

#25772

GILBERTSON, Chief Justice

[¶1.] Lita St. John sued Dr. Linda Peterson alleging medical malpractice in repairing a vesicovaginal fistula. The jury entered a verdict for Dr. Peterson. St. John appeals, arguing that the trial court erred in excluding evidence of other cases where Dr. Peterson had failed to repair vesicovaginal fistulas. We reverse and remand.

## FACTS

[¶2.] Dr. Peterson was treating St. John for stress incontinence and menstrual problems. In May 2006, Dr. Peterson performed a hysterectomy on St. John. The parties agree that the hysterectomy was medically necessary. Within two weeks of the hysterectomy, St. John began experiencing uncontrollable urination. On May 24, 2006, Dr. Peterson diagnosed St. John with a vesicovaginal fistula.[1] A vesicovaginal fistula is "an abnormal fistulous tract extending between the bladder and the vagina that allows the continuous involuntary discharge of urine into the vaginal vault." John Spurlock, *Medscape Reference*, http://emedicine.medscape.com/article/267943-overview (last visited September 8, 2011).

[¶3.] On June 9, 2006, Dr. Peterson attempted to repair St. John's fistula utilizing what she called a "Latzko" procedure. Her attempt failed and the leaking continued. Dr. Peterson again attempted to repair the fistula by way of a vaginal stitch on June 14 without utilizing any anesthetic. The attempt was not finished

---

1. Whether Dr. Peterson caused the vesicovaginal fistula is not an issue on appeal.

-1-

because St. John could not tolerate the pain. On June 20, Dr. Peterson tried a vaginal stitch again, this time with an epidural. The stitch failed. Dr. Peterson's fourth and final attempt to repair the fistula, again using the "Latzko" procedure, was made on July 13. It too failed. St. John's fistula was eventually repaired by another physician using traditional techniques, not the "Latzko" procedure.

[¶4.] St. John and three other women sued Dr. Peterson. They alleged that they were injured when Dr. Peterson performed hysterectomies that caused vesicovaginal fistulas. They further alleged that Dr. Peterson was negligent and her efforts to repair the fistula deviated from the standard of care. The trial court severed the claims after finding that there would be undue prejudice against Dr. Peterson if all four cases were presented to the jury at the same time.

[¶5.] Before trial, Dr. Peterson made a motion in limine to prevent St. John from introducing testimony of evidence of prior claims or other lawsuits brought against her. The motion was granted by the trial court. After a three- day trial in November 2009, the jury was unable to reach a verdict.

[¶6.] Another trial was scheduled for August 2010. Before this second trial, St. John's counsel requested clarification of the trial court's grant of the motion in limine from the first trial. St. John wanted to be able to question Dr. Peterson about her experience repairing vesicovaginal fistulas. The trial court again granted Dr. Peterson's motion. By written order on August 16, 2010, the trial court ordered that "[St. John] is prohibited from offering any testimony or evidence concerning other lawsuits or claims brought against [Dr. Peterson] and the facts involved in those other lawsuits and claims. . . . [St. John] is prohibited from offering any

testimony or evidence regarding [Dr. Peterson's] treatment of other patients for vesicovaginal fistulas."

[¶7.]     At the pretrial hearing, St. John also asked the court if she would be allowed to ask Dr. Peterson: "Have you had problems with this procedure in the past? Yes or no." The trial court prohibited this question because "whether or not there's been problems in the past still doesn't provide evidence of whether there was a problem in this case." In doing so, St. John argues that the trial court improperly expanded Dr. Peterson's motion in limine.

[¶8.]     At trial, St. John made an offer of proof of testimony by expert witness Dr. Arnold Wharton in which he discussed his review of some of the medical records for other patients treated by Dr. Peterson.[2] Dr. Wharton testified that he had reviewed the records of the other three women who were co-plaintiffs with St. John before the cases were severed. He testified that all four women developed fistulas while under Dr. Peterson's care within 18 months of each other. Dr. Peterson attempted to repair each woman's fistula, but failed on all four. Dr. Wharton was asked, "in terms of her competency and fixing holes in the bladder once they've been caused, does the fact that she's had multiple attempts to fix them that have failed

---

2.     There is some confusion in the record as to whether St. John was offering Dr. Wharton's offer of proof from the first trial or a section of his deposition. They are similar, but his deposition is more specific. During the offer of proof from the first trial, Dr. Wharton could not remember if two of the four women had failed attempts to repair fistulas, but did testify that St. John and one other woman had repair attempts by Dr. Peterson fail. He did not offer an opinion or any context for this testimony. For our present purposes, we presume that the offer of proof was from the deposition testimony because it appears to be more specific.

give you an impression one way or the other as to whether she knows how to do that?" He responded, "Yeah. It simply tells me that this doctor really had no idea what she's doing or how to repair a fistula appropriately and following standard principle techniques that's well-known throughout the United States."

[¶9.] The second trial was held in August 2010. The jury found in favor of Dr. Peterson. St. John raises one issue on appeal:

> Whether the trial court abused its discretion in precluding evidence regarding Dr. Peterson's experience with similar medical procedures.

## STANDARD OF REVIEW

[¶10.] "The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Mousseau v. Schwartz*, 2008 S.D. 86, ¶ 10, 756 N.W.2d 345, 350 (quoting *Kaiser v. Univ. Physicians Clinic*, 2006 S.D. 95, ¶ 29, 724 N.W.2d 186, 194). "An evidentiary ruling will not be overturned unless error is demonstrated and shown to be prejudicial error." *Novak v. McEldowney*, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912 (quoting *State v. Smith*, 1999 S.D. 83, ¶ 39, 599 N.W.2d 344, 353).

## ANALYSIS

[¶11.] Before the first trial, the trial court granted Dr. Peterson's motion to sever. The trial court found that: 1) "[t]he four cases involve different medical diagnoses and issues"; 2) "[t]here has been no showing that the testimony of each of the Plaintiffs would be admissible at the trials of the other Plaintiffs"; and, 3) "judicial economy which might be promoted by a joint trial is outweighed by the

potential prejudice that would be suffered by [Dr. Peterson] should the four cases be tried together." Before the second trial, in granting Dr. Peterson's motion to exclude evidence or testimony concerning other lawsuits or claims brought against Dr. Peterson, the trial court stated that it had severed the trials to avoid the possibility of testimony from one case affecting the other cases:

> [T]he [c]ourt first addressed this issue of the four pending cases when the Motion to Sever was brought and the [c]ourt did grant that motion because of concern . . . that there would be undue prejudice against [Dr. Peterson] in presenting all four cases to the jury at the same time. . . . The issue is whether or not Dr. Peterson committed malpractice as concerns Lita St. John. And whether or not there are other claims of malpractice from other patients isn't necessarily probative of what happened or didn't happen in this case. . . . [W]hile there may be some relevancy in other procedures conducted by Dr. Peterson, that doesn't appear to the court that there is sufficient relevancy to outweigh the prejudice that would be caused. [I]t would appear that allowing [St. John] to inquire of other patients or actions taken with other patients . . . is simply going to lead back to the same issue that the [c]ourt intended to avoid by severing the trials initially. . . . It does leave open the possibility for some evidence to be introduced as impeachment evidence [i]f the [c]ourt's approval is granted. . . . But as to the other patients who are involved in lawsuits at this time, the court doesn't believe that there is -- sufficient relevancy to overcome the prejudice that would be caused by the introduction of that evidence.

In its written order before the first trial, the trial court stated that: "[s]hould [St. John] seek to present any evidence regarding other claims against [Dr. Peterson] as impeachment evidence, [St. John's] counsel is instructed to bring the matter before the [c]ourt prior to offering any such evidence." This written order was referenced and clarified before the first trial.

[¶12.] "For evidence to be admitted during trial, it first must be found to be relevant. Once the evidence is found to be relevant, it is admissible unless it is

specifically excluded." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484. "'Relevance' and 'admissibility' are separate concepts." *Id.* ¶ 43, 764 N.W.2d at 487. We analyze each in turn.

### *Relevance*

[¶13.]     Relevance is defined by SDCL 19-12-1 (Rule 401). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). As we have previously noted, "Rule 401 uses a lenient standard for relevance. Any proffered item that would appear to alter the probabilities of a consequential fact is relevant, although it may be excluded because of other factors." *Supreme Pork*, 2009 S.D. 20, ¶ 46, 764 N.W.2d at 488 (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.04[2][c] (*Joseph M. McLaughlin, ed., Matthew Bender* 2d ed. 2008)).

[¶14.]     It is unclear from the record whether the trial court found St. John's proffered evidence relevant. On relevancy, the trial court only said that it did not appear that there was "sufficient relevancy" to overcome or outweigh the prejudice that would be caused. At trial, expert testimony indicated that vesicovaginal fistulas are a known complication of hysterectomies. We have previously stated that "the 'relevance' of evidence must be determined before considering whether or not evidence is 'admissible.'" *Id.* ¶ 43, 764 N.W.2d at 487. On remand, the court must determine whether the proffered evidence was relevant before considering

whether it is admissible.  To provide further guidance upon re-trial, we address the issue of admissibility.

*Admissibility*

[¶15.]       "After the relevance of evidence is determined, [SDCL 19-12-2 (Rule 402)] applies the concept of 'admissibility' to that determination."  *Id.* ¶ 44.  "All relevant evidence is admissible, except as otherwise provided by . . . statute . . . . Evidence which is not relevant is not admissible."  SDCL 19-12-2.  Other rules, "as otherwise provided," further condition the admissibility of relevant evidence. *Supreme Pork*, 2009 S.D. 20, ¶ 44, 764 N.W.2d at 487 (citing Rules 403, 404(a), and 404(b)).  On appeal, St. John limits her discussion on admissibility to Rule 403.

[¶16.]       Under SDCL 19-12-3 (Rule 403), relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."  As we have previously stated, "Rule 403 is not simply a 'more than, less than' comparison; the test is whether the probative value is *substantially* outweighed by the danger of unfair prejudice."  *Supreme Pork*, 2009 S.D. 20, ¶ 55, 764 N.W.2d at 490.  "To cause unfair prejudice, the evidence must persuade the jury in an unfair and illegitimate way."  *Novak*, 2002 S.D. 162, ¶ 11, 655 N.W.2d at 913.  Once the evidence is found relevant, the balance tips in favor of admission.  *Supreme Pork*, 2009 S.D. 20, ¶ 55, 764 N.W.2d at 490.  "The party objecting to the admission of evidence has the burden of establishing that the trial concerns expressed in Rule 403 substantially outweigh probative value."  *Id.* ¶ 56 (emphasis omitted) (quoting *State v. Mattson*, 2005 S.D. 71, ¶ 20, 698 N.W.2d 538, 546).  In this case, the burden was on Dr. Peterson at the trial court level.  However, on appeal St. John has the

burden to demonstrate that the trial court abused its discretion in making this ruling.

[¶17.]     In ruling on this motion, the trial court stated that "it doesn't believe that there is - - sufficient relevancy to overcome the prejudice that would be caused by the introduction of that evidence." The trial court improperly stated the language of the rule. From this record, it is unclear whether the court not only misstated the rule, but also misapplied the rule. It should have examined whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice to Dr. Peterson. Such a balancing was not conducted on the record in this case.

[¶18.]     We have repeatedly stated that a trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an "end or purpose not justified by, and clearly against reason and evidence." *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 12, 756 N.W.2d 363, 370 (quoting *Kaiser*, 2006 S.D. 95, ¶ 29, 724 N.W.2d at 194). "An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence." *Stahl v. Pollman*, 2006 S.D. 51, ¶ 9, 716 N.W.2d 794, 796 (quoting *Hendrickson v. Wagners, Inc.*, 1999 S.D. 74, ¶ 14, 598 N.W.2d 507, 510). In this case, the trial court misstated and apparently misapplied the balancing test of Rule 403. It is possible that the exclusion of the evidence "in all probability affected the outcome of the jury's verdict and thereby constitutes prejudicial error." *Mousseau*, 2008 S.D. 86, ¶ 41, 756 N.W.2d at 363.

## CONCLUSION

[¶19.]     A balancing of whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice could exclude St. John's evidence.  Applying the abuse of discretion standard of review, it appears that the trial court committed a "fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable."  *Supreme Pork*, 2009 S.D. 20, ¶ 57, 764 N.W.2d at 490.  We reverse and remand.

[¶20.]     KONENKAMP, ZINTER and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.

[¶21.]     WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.