#26456-rev & rem-GAS

**2013 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LITA ST. JOHN,                                  Plaintiff and Appellant,

         v.

LINDA PETERSON, M.D.,                           Defendant and Appellee.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

THOMAS L. SANNES
DAVID A. GEYER of
Delaney, Nielsen & Sannes, PC
Webster, South Dakota                           Attorneys for plaintiff
                                                and appellant.


REED RASMUSSEN of
Siegal, Barnett & Schutz, LLP
Aberdeen, South Dakota                          Attorneys for defendant
                                                and appellee.

\* \* \* \*

                                                CONSIDERED ON BRIEFS
                                                ON FEBRUARY 12, 2013
                                                REASSIGNED JULY 5, 2013

                                                OPINION FILED **09/04/13**

#26456

SEVERSON, Justice (on reassignment).

[¶1.] In the first appeal of this medical malpractice suit, we reversed and remanded a judgment for the defendant, Dr. Linda Peterson, holding that the trial court abused its discretion when it misconstrued the rules of evidence on the relevancy and admissibility of plaintiff Lita St. John's proffered evidence. *St. John v. Peterson (St. John I)*, 2011 S.D. 58, 804 N.W.2d 71. On remand, Dr. Peterson sought reconsideration of the evidentiary rulings and reinstatement of the judgment. Concluding that our opinion still left open the question whether the evidence was admissible, and ruling that it was not, the trial court declined to grant St. John a new trial and reinstated the judgment for Dr. Peterson. We reverse and remand.

## BACKGROUND

[¶2.] After a 2010 jury verdict for Dr. Peterson in a negligence suit, St. John appealed. In our decision, we framed the issue as "[w]hether the trial court abused its discretion in precluding evidence regarding Dr. Peterson's experience with similar medical procedures." *Id.* ¶ 9. From the trial court's ruling, we could not determine whether it deemed St. John's proffered evidence relevant, because the "court only said that it did not appear that there was 'sufficient relevancy' to overcome or outweigh the prejudice that would be caused." *Id.* ¶ 14. We declared that on remand, "the court must determine whether the proffered evidence was relevant before considering whether it is admissible." *Id.*

[¶3.] Returning to the trial court at the end of 2011, Dr. Peterson sought to exclude plaintiff's proffered evidence, arguing that if the trial court determined that

-1-

the evidence was admissible, it could then proceed with a new trial. But if, using the correct standard, the trial court concluded that the evidence was inadmissible, it could reenter the judgment.

[¶4.] St. John responded that the trial court must order a new trial regardless, because this Court's decision to reverse and remand meant the parties stood as if no trial had yet been held. Alternatively, St. John argued that if the trial court decided to reconsider the issue, Dr. Peterson's admissions "that she had several failed attempts repairing vesicovaginal fistulas involving multiple patients" made it more probable that she breached the standard of care when she treated St. John. Additionally, St. John argued that the evidence was admissible under SDCL 19-12-5 (Rule 404(b)) as other acts evidence: Dr. Peterson's past failures were relevant to prove Dr. Peterson's deficiency in knowledge and skill. Lastly, St. John asserted that Dr. Peterson testified at trial as an expert, and therefore, the evidence was proper for impeaching her knowledge, skill, experience, training, or education. The appellate briefs and the transcript from the oral argument for *St. John I* were made part of the trial court's record. After the hearing, the trial court issued a memorandum decision concluding that a retrial was not the only permissible option. It then reexamined the questioned evidence.

[¶5.] St. John's proffered evidence consisted of three other surgeries where Dr. Peterson's patients suffered vesicovaginal fistulas. With the first patient, Cheryl, Dr. Peterson performed an abdominal hysterectomy. She observed a "rent" on Cheryl's bladder, but took no steps in response. Later, Cheryl developed a vesicovaginal fistula. Dr. Peterson attempted to repair the fistula using the Latzko

procedure, the same procedure used with St. John. Dr. Peterson thought the repair was successful, but Cheryl developed another fistula at a different location. Dr. Peterson repaired the second fistula, again using the Latzko procedure, but after that attempt, Cheryl sought care elsewhere.

[¶6.]     While Cheryl's and St. John's treatments were similar—total abdominal hysterectomies with vesicovaginal fistulas—the trial court found the evidence of Cheryl's treatment irrelevant. It concluded that there was "a successful repair of one fistula and an unknown outcome concerning the other fistula." Cheryl's treatment, in the trial court's opinion, did not make the existence of any fact in St. John's case more or less probable. However, in her deposition, Dr. Peterson testified that she did indeed fail to repair a fistula for Cheryl. Even if relevant, the trial court went on to conclude that the probative value of this evidence was outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. This evidence, the trial court stated, was merely an allegation of negligence in the failure to repair one of Cheryl's two vesicovaginal fistulas. Thus, the trial court reasoned, the jury would be required to "conduct a mini-trial concerning the allegations about the treatment provided to Cheryl[.]" Moreover, "admission of the evidence from [Cheryl's] case would open the door to Dr. Peterson presenting evidence in defense of those allegations as well as other successful outcomes." The trial court ruled the evidence inadmissible under SDCL 19-12-3 (Rule 403).

[¶7.]     As for the second patient, Crystal, during her vaginal hysterectomy, a hole was discovered in her bladder. Although Dr. Peterson repaired the hole during

surgery, Crystal was later diagnosed with a vesicovaginal fistula. But Dr. Peterson did not diagnose the fistula or attempt to repair it. Because St. John's negligence claim centered on Dr. Peterson's repair of her fistula, and no such repair was performed by Dr. Peterson on Crystal, the trial court ruled the evidence of Crystal's care irrelevant. Moreover, the trial court found that the procedure performed was different (vaginal hysterectomy), the claim was a mere allegation, and the jury would again be required to conduct a mini-trial.

[¶8.]    Ruth, the third patient, underwent a vaginal hysterectomy and also experienced a hole in her bladder. Dr. Peterson repaired the hole during surgery. Later, she diagnosed Ruth with a vesicovaginal fistula. Yet Dr. Peterson did not perform any repair because Ruth sought care elsewhere. Thus, the trial court found the evidence of Ruth's care irrelevant and inadmissible; and even if relevant, any probative value it may have had would be outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury.

[¶9.]    Then, the trial court addressed St. John's alternative argument that her proffered evidence was admissible as other acts evidence under SDCL 19-12-5 (Rule 404(b)) to prove Dr. Peterson's insufficiency of knowledge. The trial court concluded that Dr. Peterson's treatment of Cheryl, Crystal, and Ruth would not provide additional evidence on this subject, but would only serve to insinuate that Dr. Peterson committed malpractice in other cases, so she must have done the same in St. John's case.

[¶10.]    Finally, the trial court examined St. John's claim that her proffered evidence on the three other cases was admissible to impeach Dr. Peterson's

testimony as an expert witness. The trial court concluded from Dr. Peterson's previous trial testimony that she did not testify as an expert, but rather explained how she treated St. John and the procedures her treatment required. St. John's proffered evidence, the trial court ruled, was excludable as improper impeachment.

[¶11.]     Accordingly the trial court granted the motion for reconsideration and entered a judgment for Dr. Peterson. In her appeal, St. John asserts that the trial court erred by reviving a judgment that had been reversed and remanded, and abused its discretion when it ruled that her proffered evidence was inadmissible.

## STANDARD OF REVIEW

[¶12.]     We review de novo whether a trial court's action conformed with our mandate. *Weins v. Sporleder*, 2000 S.D. 10, ¶ 10, 605 N.W.2d 488, 490-91. *See also* SDCL 15-30-14 ("In all cases the Supreme Court shall remit its judgment or decision to the court from which the appeal was taken, to be enforced accordingly; and if from a judgment, final judgment shall thereupon be entered in the court below in accordance therewith, except where otherwise ordered.").

## DISCUSSION

[¶13.]     **Revision to ruling on a motion in limine**

[¶14.]     After our decision in *St. John I*, Dr. Peterson moved for the trial court to reconsider a previous ruling on a motion in limine. Dr. Peterson argued that the trial court's order on the motion in limine was reversed and remanded by this Court. This is incorrect. The trial court's earlier error was its failure to determine, under the correct standards, the relevancy and admissibility of plaintiff's proffered evidence. We did not rule on our own that plaintiff's evidence was admissible. We

left that conclusion to the circuit court, indicating that the evidence "could" still be excluded. *See St. John I*, 2011 S.D. 58, ¶ 19, 804 N.W.2d at 77. Ultimately, we reversed the judgment, not the order on a motion in limine.

[¶15.] Dr. Peterson misconstrues the nature and effect of a motion in limine. A motion in limine is a motion "'heard in advance of jury selection, which asks the court to instruct the party, its counsel and witnesses not to mention certain facts *unless and until permission of the court is first obtained outside the presence and hearing of the jury.'*" *Kjerstad v. Ravellette Publ'ns, Inc.*, 517 N.W.2d 419, 426 (S.D. 1994) (quoting *Lapasinskas v. Quick,* 170 N.W.2d 318, 319 n.1 (Mich. App. 1969)). *See generally Black's Law Dictionary* 896 (4th ed. 1968) (defining "in limine" as "[o]n or at the threshold; at the very beginning; preliminarily"). "The purpose of a motion in limine is to prevent prejudicial evidence, argument, or reference from reaching the ears of the jury. However, a trial court's ruling on a motion in limine is preliminary and may change depending on what actually happens in trial." *Kappenman v. Stroh,* 2005 S.D. 96, ¶ 4, 704 N.W.2d 36, 39 (citing *First Premier Bank v. Kolcraft Enters., Inc.*, 2004 S.D. 92, ¶ 7, 686 N.W.2d 430, 437), *superseded by rule on other grounds*, *In re Estate of Duebendorfer*, 2006 S.D. 79, 721 N.W.2d 438. *See generally* 75 Am. Jur. 2d *Trial* § 55 (2007) (describing the reviewability of a trial court's ruling on a motion in limine); 1 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence*, § 1:11(2) (3d ed. 2007) ("It seems that the trial court may change its ruling during trial . . . . There is no doubt on this point if testimony turns out differently from what was expected at the time of the pretrial ruling, or if other unexpected events that bear upon the propriety of the ruling occur. Probably

#26456

the judge may simply change the ruling because, in the actual context of trial, the issues and merits seem different and the ruling made before seems wrong.") (footnote omitted); and 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 103.11[2][b][ii] (2d ed. 2002) ("Motions in limine are frequently made in a vacuum and in anticipation of some hypothetical circumstance that may not develop at trial. As a result, if a party files numerous motions in limine, the trial court may not pay close attention to each one, believing that many of them are purely hypothetical. An objection that is made when challenged evidence is actually introduced at trial gives the trial court an opportunity to reconsider the grounds of the motion in light of the actual circumstances that have developed at trial.") (footnote omitted).

[¶16.] The United States Supreme Court has also weighed in on the effect of rulings on motions in limine. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 1854 n.3, 146 L. Ed. 2d 826 (2000). In addition, the Supreme Court has noted that a ruling on an in limine motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [party's] proffer." *Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460, 463, 83 L. Ed. 2d 443 (1984). "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id.* at 41-42.

[¶17.] On December 22, 2011, the trial court held a hearing on the motion for reconsideration of the motion in limine, where Dr. Peterson argued that if the trial

court determined that certain evidence was inadmissible, it was not necessary to go through a trial. St. John argued that evidence of three other surgeries performed by Dr. Peterson was relevant and demonstrated Dr. Peterson's insufficient knowledge to perform St. John's surgery. The trial court determined that the evidence of Dr. Peterson's other surgeries was not relevant evidence and further was inadmissible under SDCL 19-12-3 (Rule 403) and SDCL 19-12-5 (Rule 404(b)). Based on the exclusion of the evidence, the trial court granted the motion for reconsideration and entered a judgment for Dr. Peterson. The trial court's ruling ignores that the purpose of a motion in limine is to make a preliminary determination regarding the introduction of evidence or argument outside the presence of the jury to protect the jury from hearing prejudicial evidence.

[¶18.]       The trial court's ruling on this evidentiary motion in limine is preliminary and interlocutory, and it is subject to change during trial. In assessing this case, we do not assert that a ruling on a motion in limine could never be a definitive ruling under SDCL 19-9-3 (Rule 103(a)). SDCL 19-9-3 (Rule 103(a)) addresses how and when to preserve an evidentiary ruling for appeal. The statute provides that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." SDCL 19-9-3 (Rule 103(a)). Rule 103(a) addresses a separate issue: how to preserve a record and how a party

may preserve an evidentiary issue for appeal without repeated objections. *See id.*[1]

[¶19.] Many issues addressed by motions in limine, including evidentiary issues, are frequently reexamined during trial and the trial court may change rulings based on the actual evidence at trial. Thus, it was an error for the trial court in this case to reinstate a judgment based on reconsidering and ruling on a motion in limine outside of the context of a trial. We reverse the trial court's decision and remand for a new trial.

[¶20.] **Legal effect of reversing a judgment**

[¶21.] We have previously discussed the legal effect of reversal. *See Gluscic v. Avera St. Luke's*, 2002 S.D. 93, ¶ 20, 649 N.W.2d 916, 920; *Janssen v. Tusha*, 67 S.D. 597, 601, 297 N.W. 119, 120 (1941). We have stated that "'the mandate of this court ordering a reversal of a judgment without other direction nullifies the

---

1. SDCL 19-9-3 (Rule 103(a)) provides:

    Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

    (1) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

    (2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

    Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

judgment, findings of facts, and conclusions of law, and *leaves the case standing as if no judgment or decree had ever been entered.*" *Gluscic*, 2002 S.D. 93, ¶ 20, 649 N.W.2d at 920 (quoting *Janssen*, 297 N.W. at 120) (emphasis added). "A complete reversal generally annuls the judgment below, and the case is put in the same posture in which it was before the judgment was entered." 5 Am. Jur. 2d *Appellate Review* § 803 (2013) (footnotes omitted). "Thus, after the reversal on appeal, the parties' rights are left wholly unaffected by any previous determination that was reversed, so that a judgment that is reversed and remanded stands as if no trial has yet been held." *Id.*

[¶22.]     Other appellate courts have taken the same position as we have when a judgment is reversed. "To 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it.'" *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (quoting *Black's Law Dictionary* 1319 (6th ed. 1990)). "A judgment reversed by a higher court is 'without any validity, force or effect, and ought never to have existed.'" *Id.* (quoting *Butler v. Eaton,* 141 U.S. 240, 244, 11 S. Ct. 985, 987, 35 L. Ed. 713 (1891)). *See also Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145, 39 S. Ct. 237, 242, 63 L. Ed. 517 (1919) (stating that "the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby"); *Riha v. Int'l Tel. & Tel. Corp.*, 533 F.2d 1053, 1054 (8th Cir. 1976) (noting "[a] judgment vacated on appeal is of no further force and effect").

[¶23.] The language that we used in *St. John I* is straightforward. In that case, we wrote, "[w]e reverse and remand." *St. John I*, 2011 S.D. 58, ¶ 19, 804 N.W.2d at 77. Because we reversed and remanded without other direction, the judgment was voided. The restoration of a reversed jury verdict based on a trial court's review of a pre-trial motion in limine on an evidence issue subverts the trial process.

**CONCLUSION**

[¶24.] We reverse the trial court's decision and remand the matter to the trial court for retrial.

[¶25.] GILBERTSON, Chief Justice, and WILBUR, Justice, concur.

[¶26.] KONENKAMP and ZINTER, Justices, dissent.


KONENKAMP, Justice (dissenting).

[¶27.] This case was sent back to the circuit court to correct a legal error in deciding the admission of evidence. On remand, the court used the correct legal analysis and again excluded plaintiff's proffered evidence. As the Court today acknowledges, "The trial court's earlier error was its failure to determine, under the correct standards, the relevancy and admissibility of plaintiff's proffered evidence." Nonetheless, despite the fact that the circuit court has now used the correct legal analysis in excluding the evidence, this Court holds that there must be a new trial because the trial court "may change" its rulings.

[¶28.] A new trial is necessary, the Court reasons, because an in limine ruling is interlocutory and preliminary. Yet in our earlier decision, *St. John I*, we

did not address the circuit court's decision to exclude the evidence in the context of its preliminary or interlocutory nature. Rather, *St. John I* examined the court's application *during trial* of two evidentiary rules, SDCL 19-12-1 (Rule 401) and SDCL 19-12-2 (Rule 402), as those rules related to the court's decision to exclude plaintiff's proffered evidence. Then, because the record was "unclear" and because the trial court applied the wrong legal standard when it excluded the proffered evidence, we remanded because it was "*possible* that the exclusion of the evidence" affected the outcome of the jury's verdict. *See* 2011 S.D. 58, ¶¶ 14, 18, 804 N.W.2d at 75, 77 (emphasis added). Had the record been clear, this Court could have upheld the jury's verdict notwithstanding the court's evidentiary error. Indeed, in past cases we have affirmed where a trial court has erred, but on the record, application of the correct legal standard would lead to the same result: exclusion of the evidence.[2]

[¶29.]     Trial courts must do their best to conduct remand proceedings as consistent as possible with the appellate mandate. *Pac. Gas & Elec. Co. v. United States,* 668 F.3d 1346, 1351-52 (Fed. Cir. 2012). Both the letter and the spirit must be taken into account in following "the appellate court's opinion and the

---

2.     *See Surgical Inst. of S.D., P.C. v. Sorrell*, 2012 S.D. 48, 816 N.W.2d 133 (independently considering relevancy and admissibility of the record evidence); *Janis v. Nash Finch Co.*, 2010 S.D. 27, 780 N.W.2d 497 (court applied wrong legal standard and this Court applied the correct standard to the record evidence); *In re C.V.*, 1998 S.D. 47, 579 N.W.2d 17 (affirming because result would not change on rehearing); *Horne v. Crozier*, 1997 S.D. 65, 565 N.W.2d 50 (court applied wrong standard, yet affirmed on assessment of the record).

circumstances it embraces." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) (citations omitted).[3] Here, both the letter and the spirit were followed on remand when the circuit court considered, using the correct legal standards, the admissibility and relevancy of the proffered evidence. By appropriately applying the rules of evidence to plaintiff's proffered evidence, the court acted in harmony with our mandate. To order a new trial simply because the evidentiary ruling involved a motion in limine is nonsensical. After all, in *St. John I*, we held that the error in excluding plaintiff's proffered evidence was the faulty analysis leading to the exclusion. But we wrote that under the correct analysis this evidence "could" still be excluded. *See St. John I*, 2011 S.D. 58, ¶ 19, 804 N.W.2d at 77.

[¶30.] That the circuit court made a "definitive ruling" excluding plaintiff's proffered evidence there can be no doubt. SDCL 19-9-3 (Rule 103(a)). This evidence, Dr. Peterson's operations on other patients, has been consistently rejected, even to the extent of requiring separate trials for each plaintiff in order "to avoid the possibility of testimony from one case affecting the other cases[.]" *St. John I*, 2011 S.D. 58, ¶ 11, 804 N.W.2d at 75. And the circuit court's severance decision was not appealed. The purpose of a new trial is to have a trial free from the errors of the previous trial. But the new trial ordered here will only duplicate

---

3. *See Pac. Gas & Elec. Co.,* 668 F.3d at 1351; *Carolina Power & Light Co. v. United States,* 98 Fed. Cl. 785, 794 (2011); *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese,* 356 F.3d 576, 583-84 (4th Cir. 2004); *Ayyad v. Sprint Spectrum, L.P.,* 148 Cal. Rptr. 3d 709, 715-16 (Cal. Ct. App. 2012); *see also Briggs v. Pa. R.R. Co.,* 334 U.S. 304, 306, 68 S. Ct. 1039, 1040, 92 L. Ed. 1403 (1948).

the last trial. Our rules of evidence are to be construed to eliminate "unjustifiable expense and delay[.]" SDCL 19-9-2 (Rule 102). Thus, it is disappointing to contemplate how, when this Court finds no error in the circuit court's present evidentiary ruling and no appeal was taken on the decision to sever the cases in order to prevent this same evidence from prejudicing this case, that there must nonetheless be another trial because the circuit court might *change its rulings*.

[¶31.]     ZINTER, Justice, joins this dissent.