#27098-a-LSW

**2015 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LITA ST. JOHN,                                Plaintiff and Appellant,

    v.

LINDA PETERSON, M.D.,                         Defendant and Appellee.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

THOMAS L. SANNES
DAVID A. GEYER of
Delaney, Nielsen & Sannes, PC
Webster, South Dakota                        Attorneys for plaintiff
                                             and appellant.



REED RASMUSSEN of
Siegel, Barnett and Schutz, LLP
Aberdeen, South Dakota                       Attorneys for defendant
                                             and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 23, 2015

OPINION FILED **06/03/15**

#27098

WILBUR, Justice

[¶1.] The circuit court entered judgment for Defendant, Dr. Linda Peterson. Plaintiff, Lita St. John, appeals the judgment and challenges the court's ruling that certain evidence was not relevant and, therefore, was inadmissible. We affirm.

## Background

[¶2.] This is the third appeal of this medical malpractice action. *See St. John v. Peterson* (*St. John I*), 2011 S.D. 58, 804 N.W.2d 71; *St. John v. Peterson* (*St. John II*), 2013 S.D. 67, 837 N.W.2d 394. The subject of the first appeal involved an appeal of the 2010 jury verdict in favor of Dr. Peterson. *St. John I*, 2011 S.D. 58, ¶ 19, 804 N.W.2d at 74. The circuit court denied the admission of testimony from St. John's expert witness, Dr. Arnold Wharton, regarding Dr. Peterson's experience with similar medical procedures. *Id.* ¶ 8. We held that the circuit court "misstated and apparently misapplied the balancing test of Rule 403." *Id.* ¶ 18, 804 N.W.2d at 77. As a result, we reversed and remanded to the circuit court. *Id.* ¶ 19.

[¶3.] On remand, the circuit court concluded that the proffered evidence was inadmissible and reinstated the original judgment. *St. John II*, 2013 S.D. 67, ¶ 11, 837 N.W.2d at 397. The court issued a memorandum decision on June 4, 2012, and findings of fact and conclusions of law on July 9, 2012. We held on appeal that the circuit court erred when it reinstated the judgment against Dr. Peterson. *Id.* ¶ 23, 837 N.W.2d at 400. Consequently, we reversed and remanded for a retrial, stating that "[t]he restoration of a reversed jury verdict based on a trial court's review of a pre-trial motion in limine on an evidence issue subverts the trial process." *Id.*

[¶4.]     This third appeal concerns St. John's claim that Dr. Peterson was negligent for failing to refer St. John to a doctor who specialized in repairing vesicovaginal fistulas.[1]  On April 10, 2014, Dr. Peterson filed a motion in limine with the circuit court.  Dr. Peterson requested that the court preclude, inter alia, (1) "Plaintiff from offering any testimony or evidence concerning other lawsuits or claims brought against Defendant or the facts involved in those other lawsuits or claims[;]" and (2) "Plaintiff from offering any testimony or evidence regarding Defendant's unsuccessful treatment of other patients with vesicovaginal fistulas." Dr. Peterson further requested that the court "reaffirm its Order regarding Dr. Wharton's deposition filed August 18, 2010, and order the redaction of the same portions of his deposition that were redacted during the last trial of this matter."

[¶5.]     On April 24, 2014, the circuit court conducted a pretrial hearing on the motion in limine.  The court granted Dr. Peterson's motion in limine on April 30, 2014.  This precluded St. John from proffering statements from Dr. Peterson's deposition regarding her treatment of three former patients who suffered vesicovaginal fistulas: Cheryl, Crystal, and Ruth.  Moreover, the court reaffirmed its July 9, 2012 findings of fact and conclusions of law, wherein the court found that St. John's proffered evidence regarding Dr. Peterson's treatment of Cheryl, Crystal, and Ruth, was not relevant.

---

1.     On August 16, 2010, the circuit court granted summary judgment in favor of Dr. Peterson on St. John's claim of informed consent.  Later, on April 20, 2014, the court granted partial summary judgment in favor of Dr. Peterson on St. John's claim that Dr. Peterson negligently caused injury to St. John's bladder.

[¶6.] Specifically, the circuit court found that evidence regarding Dr. Peterson's care and treatment of Cheryl was not relevant because it did not make the existence of any fact in St. John's case more or less probable on the issue of Dr. Peterson's competence to repair St. John's vesicovaginal fistula. Dr. Peterson performed an abdominal hysterectomy on Cheryl. During the surgery, Dr. Peterson observed a "rent" on Cheryl's bladder, but she took no steps to address the "rent" at the time of the surgery. Later, Cheryl developed a vesicovaginal fistula in a different location than the "rent." Dr. Peterson successfully repaired the fistula. Thereafter, Cheryl developed another fistula in a separate location from the first fistula. Dr. Peterson attempted to repair the second fistula. Following the surgery of the second fistula, Cheryl sought care elsewhere and underwent further surgery. In finding that this evidence was not relevant, the court noted that Dr. Peterson successfully repaired one fistula, and the "results of her attempts to repair the second fistula are unknown."

[¶7.] In addition, the circuit court found that evidence regarding Dr. Peterson's care and treatment of Crystal and Ruth was not relevant because Dr. Peterson did not attempt to use the Latzko procedure to repair either Ruth or Crystal's vesicovaginal fistulas. Instead, "a different surgical procedure" was performed on Crystal and Ruth than was performed on St. John. Accordingly, the court found that Dr. Peterson's treatment of Crystal and Ruth did "not make the existence of any fact in Plaintiff's case more or less probable on the issue of Defendant's competence to repair Plaintiff's vesicovaginal fistula."

[¶8.] Furthermore, in its April 30, 2014 order regarding Dr. Peterson's motion in limine, the circuit court reaffirmed most of the redactions to Dr. Wharton's deposition. At the third jury trial[2] on April 30, 2014, St. John made two offers of proof regarding the redactions to Dr. Wharton's deposition. The first offer of proof included statements made by Dr. Wharton regarding his review of the medical records for Cheryl, Crystal, and Ruth. Dr. Wharton stated that each of these three women developed vesicovaginal fistulas while under Dr. Peterson's care within 18 months of each other, and that Dr. Peterson attempted and failed to repair each woman's fistula. St. John's counsel asked Dr. Wharton, "[I]n terms of her competency [at] fixing holes in the bladder once they've been caused, does the fact that she's had multiple attempts to fix them that have failed give you an impression one way or the other as to whether she knows how to do that?" Dr. Wharton replied, "Yeah. It simply tells me that this doctor really had no idea what she's doing or how to repair a fistula appropriately and following standard principle techniques [that are well known] throughout the United States."

[¶9.] The second offer of proof involved statements made by Dr. Wharton about whether Dr. Peterson informed St. John that repairing fistulas was not her specialty. The offer of proof included the following exchange:

> **Counsel**: Dr. Wharton, I only have a couple of more questions. And I may have covered this, but I'm not sure. But at any point along the care, did you ever see anytime where Dr. Peterson indicated in her records that she'd had any kind of conversation

---

2. The jury was unable to reach a verdict in the first trial. *St. John I*, 2011 S.D. 58, ¶ 5, 804 N.W.2d at 73. In August 2010, the court conducted a second jury trial. *Id.* ¶ 9, 804 N.W.2d at 74. We reversed the second trial and remanded for a third trial. *See St. John II*, 2013 S.D. 67, ¶ 24, 837 N.W.2d at 400.

with Ms. St. John where she said something to the effect of "fixing a hole in your bladder is not my subspecialty, you're really better off getting referred to someone whose specialty is fixing this type of thing"?

**Dr. Wharton**: No, I never saw that in the record.

**Counsel**: If that were the case, if Dr. Peterson knew that it wasn't her specialty and she knew that there were people whose specialty it was, would the standard of care require her to inform the patient of that and . . . let them make an informed decision?

**Dr. Wharton**: Yes.

**Counsel**: And in that regard, did you see any evidence in the records, or from the evidence in the records, did it appear that Dr. Peterson had fallen below the standard of care?

**Dr. Wharton**: In my opinion . . . that, by definition, ends below the standard of care, to offer a procedure that you're not comparable doing without informing the patient or giving the patient a choice.

[¶10.]     The circuit court rejected both offers of proof. The court stated that it "would deny the [first] offer of proof at this time for the reasons that the [c]ourt has previously set forth in its rulings and memorandum decision that was issued previously." At an earlier trial, the court ruled that the first offer of proof was inadmissible because the testimony about the three women, as described above, was not relevant. The court denied the second offer of proof because it found that the statements made by Dr. Wharton related to the issue of informed consent, an issue upon which the court had previously granted summary judgment in favor of Dr. Peterson.

[¶11.]     The jury returned a verdict in favor of Dr. Peterson. St. John appeals and raises the following issues for our review:

> 1.     Whether the circuit court erred by denying admission of evidence regarding Dr. Peterson's treatment of other patients.

2.	Whether the circuit court erred by denying admission of Dr. Wharton's testimony that Dr. Peterson breached the standard of care by failing to inform St. John that repairing vesicovaginal fistulas was not her specialty.

**Standard of Review**

[¶12.]	"'The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" *St. John I*, 2011 S.D. 58, ¶ 10, 804 N.W.2d at 74 (quoting *Mousseau v. Schwartz*, 2008 S.D. 86, ¶ 10, 756 N.W.2d 345, 350). We will not overturn an evidentiary ruling unless the error is prejudicial. *Id.* (quoting *Novak v. McEldowney*, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912). "'Error is prejudicial when, in all probability, it produced some effect upon the final result and affected rights of the party assigning it.'" *State v. Kvasnicka*, 2013 S.D. 25, ¶ 56, 829 N.W.2d 123, 135 (quoting *State v. Vatne*, 2003 S.D. 31, ¶ 10, 659 N.W.2d 380, 383).

**Analysis**

[¶13.]	**1.	Whether the circuit court erred by denying admission of evidence regarding Dr. Peterson's treatment of other patients.**

[¶14.]	The circuit court denied admission of evidence relating to lawsuits or claims brought against Dr. Peterson and evidence relating to Dr. Peterson's unsuccessful treatment of other patients with vesicovaginal fistulas. The court also denied admission of Dr. Wharton's testimony regarding Dr. Peterson's treatment of other patients with fistulas. St. John argues that the court erred by denying this evidence because the evidence was relevant under SDCL 19-12-1 (Rule 401), and

admissible under SDCL 19-12-2 (Rule 403) or, alternatively, under SDCL 19-12-5 (Rule 404(b)). "'For evidence to be admitted during trial, it must be found to be relevant. Once the evidence is found to be relevant, it is admissible unless it is specifically excluded.'" *St. John I*, 2011 S.D. 58, ¶ 12, 804 N.W.2d at 75 (quoting *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484). "Evidence which is not relevant is not admissible." SDCL 19-12-2 (Rule 402).

[¶15.] "Relevance" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). We have noted that "Rule 401 uses a lenient standard for relevance. Any proffered item that would appear to alter the probabilities of a consequential fact is relevant, although it may be excluded because of other factors." *Supreme Pork*, 2009 S.D. 20, ¶ 46, 764 N.W.2d at 488 (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.04[2][c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2008)). The proponent of Rule 404(b) evidence "has the burden of showing the relevance of the other crimes, wrongs, or acts." *State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 798. Rule 404(b) evidence offered to show a defendant's propensity to commit the act is not relevant. *Id.* ¶ 14, 593 N.W.2d at 799. "Once a circuit court finds other acts evidence relevant, the balance tips emphatically in favor of admission." *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 17, 835 N.W.2d 886, 893 (quoting *State v. Huber*, 2010 S.D. 63, ¶ 59, 789 N.W.2d 283, 302) (internal quotation marks omitted).

[¶16.] First, we consider the exclusion of statements made by Dr. Peterson during a deposition regarding her treatment of Cheryl, Crystal, and Ruth. St. John argues that this evidence is relevant because it addresses Dr. Peterson's experience, knowledge, and competency in repairing fistulas. St. John asserts, "Dr. Peterson's failed attempts to repair a similar vesicovaginal fistula in the same location, during the same time frame, make it more probable . . . that she did not possess the necessary skill to perform the repair." St. John contends that this evidence addresses a "consequential fact that goes to the heart of the case[.]" *See* SDCL 19-12-1 (Rule 401).

[¶17.] The circuit court did not abuse its discretion when it determined that the evidence pertaining to Dr. Peterson's treatment of Crystal and Ruth did not reach the threshold level of relevance under Rule 401. *See id.*; *Supreme Pork*, 2009 S.D. 20, ¶ 43, 764 N.W.2d at 487. Although Crystal and Ruth both developed a vesicovaginal fistula after Dr. Peterson performed a vaginal hysterectomy on them, Dr. Peterson did not attempt to repair either of their fistulas. Instead, Crystal and Ruth both sought treatment elsewhere. Consequently, the proffered evidence regarding Dr. Peterson's treatment of Crystal and Ruth does not tend to make the question of whether Dr. Peterson was competent in repairing fistulas any more or less probable. *See* SDCL 19-12-1 (Rule 401).

[¶18.] Likewise, the circuit court did not abuse its discretion when it denied admission of evidence of Dr. Peterson's treatment of Cheryl. Cheryl developed a fistula after Dr. Peterson performed an abdominal hysterectomy on her. Dr. Peterson successfully repaired the fistula. After this surgery, Cheryl developed

another fistula in a separate location from the first fistula. Dr. Peterson performed surgery on the second fistula. The circuit court found that "the results of her attempts to repair the second fistula are unknown." Following the surgery of the second fistula, Cheryl sought care elsewhere and eventually underwent further surgery. The court found that Dr. Peterson's "post-operative care of [Cheryl] does not make the existence of any fact in [St. John's] case more or less probable on the issue of [Dr. Peterson's] competence to repair [St. John's] vesicovaginal fistula," and therefore "evidence concerning the care and treatment of [Cheryl] is not relevant." We agree. All that is clear from this evidence is that Dr. Peterson did in fact successfully repair Cheryl's first fistula. The results of Cheryl's second surgery were not made known to the circuit court. Accordingly, the court did not abuse its discretion when it determined this evidence was not relevant.

[¶19.]     Next, we consider whether the circuit court erred by excluding St. John's offer of proof regarding Dr. Wharton's testimony about Dr. Peterson's treatment of former patients. A circuit court has "broad discretion in ruling on the admissibility of expert opinions." *Reinfeld v. Hutcheson*, 2010 S.D. 42, ¶ 27, 783 N.W.2d 284, 292 (quoting *Garland v. Rossknecht*, 2001 S.D. 42, ¶ 9, 624 N.W.2d 700, 702). "'When dealing with expert opinion, the court must fulfill a gatekeeping function, ensuring that the expert opinion meets the prerequisites of relevance and reliability before admission.'" *Id.* (quoting *Garland*, 2001 S.D. 42, ¶ 10, 624 N.W.2d at 702). "A trial judge must ensure that an expert's testimony rests on both a reliable foundation and is relevant to the task at hand." *Id.* (quoting *Rogen v.*

*Monson*, 2000 S.D. 51, ¶ 13, 609 N.W.2d 456, 459) (internal quotation marks omitted).

[¶20.] Here, the circuit court did not err when it denied St. John's first offer of proof and excluded a portion of Dr. Wharton's testimony. Dr. Wharton's testimony was neither relevant nor reliable. *See id.* Dr. Wharton relied on Dr. Peterson's statements during her deposition to reach the conclusion that she was not competent to perform the Latzko procedure on St. John. As discussed above, Dr. Peterson's statements were not relevant to the case. Furthermore, Dr. Wharton incorrectly testified that Dr. Peterson had attempted a Latzko repair on Cheryl, Crystal, Ruth, and St. John, and that all such attempts failed. Dr. Peterson and two expert witnesses submitted affidavits establishing that Dr. Peterson did not perform a Latzko repair on Crystal and Ruth. St. John did not submit evidence refuting these affidavits. Thus, we conclude that the circuit court did not err when it denied St. John's offer of proof on grounds of relevance. Therefore, we need not consider St. John's arguments as to whether the evidence was admissible under Rule 403 or Rule 404(b). *See St. John I*, 2011 S.D. 58, ¶ 12, 804 N.W.2d at 75.

[¶21.] **2. Whether the circuit court erred by denying admission of Dr. Wharton's testimony that Dr. Peterson breached the standard of care by failing to inform St. John that repairing vesicovaginal fistulas was not her specialty.**

[¶22.] The circuit court excluded St. John's second offer of proof on the grounds that it was not relevant to St. John's claim that Dr. Peterson was negligent by failing to refer St. John to a specialist. Instead, the court found that the offer of proof related to the issue of informed consent, an issue that the circuit court

previously resolved by summary judgment in favor of Dr. Peterson.[3] St. John contends that the court erred when it determined that the offer of proof did not relate to her claim that Dr. Peterson was negligent in failing to refer St. John to a specialist for treatment of her fistula. We disagree.

[¶23.] The circuit court's "evidentiary rulings are presumptively correct." *Cain v. Fortis Ins. Co.*, 2005 S.D. 39, ¶ 31, 694 N.W.2d 709, 716. At the third trial, the court instructed the jury on the duty to refer a patient to a specialist:

> A physician has the duty to refer a patient to a specialist or recommend the assistance of a specialist if, under the circumstances, a reasonably careful and skillful physician would do so.

The offer of proof at issue included the following exchange between Dr. Wharton and counsel at his deposition. Counsel asked Dr. Wharton, "[I]f Dr. Peterson knew that [repairing fistulas] wasn't her specialty and she knew that there were people whose specialty it was, would the standard of care require her to *inform the patient of that and . . . let them make an informed decision?*" (Emphasis added.) Dr. Wharton replied, "In my opinion . . . that, by definition, ends below the standard of

---

3. Addressing St. John's motion for reconsideration of the prior limine ruling on the second offer of proof, the court stated during the third trial:

> The portion of the deposition in question does make reference to being referred to someone else. But the answer that Dr. Wharton gave does not necessarily indicate that that's what he's talking about. The second question before Dr. Wharton's answer indicates that we're talking about the standard of care required her to inform the patient of that and let them make an informed decision. And it appears to the [c]ourt that the prior ruling in which this evidence was determined to be inadmissible due to the ruling on the summary judgment on informed consent would still be applicable, so the Motion for Reconsideration would be denied.

care, to offer a procedure you're not comparable doing without *informing the patient* or giving the patient a choice." (Emphasis added.)

[¶24.] This offer of proof relates to the issue of whether Dr. Peterson informed St. John that she was not a specialist in repairing vesicovaginal fistulas, not whether Dr. Peterson breached a duty to refer St. John to a specialist. Notably absent from the offer of proof is any opinion from Dr. Wharton on whether, under these circumstances, "a reasonably careful and skillful physician would" have referred St. John or recommended that she see a specialist, as is required to establish negligence in failing to refer to a specialist. Dr. Wharton merely opined that Dr. Peterson's conduct fell below the standard of care when she failed to inform St. John that repairing fistulas was not her specialty.

[¶25.] Moreover, a review of the record as a whole establishes that Dr. Wharton's testimony did not relate to the issue of negligence in failing to refer to a specialist. Dr. Wharton's deposition occurred before the second trial on February 12, 2010. Several months before the deposition, Dr. Wharton submitted an affidavit to the court alleging that Dr. Peterson's care fell below the accepted standard of care due to her failure to obtain informed consent and for her alleged negligent treatment of St. John's fistula. Dr. Wharton made no mention of the standard of care for referring a patient to a specialist in his affidavit. Indeed, St. John did not claim that Dr. Peterson was negligent in failing to refer her to a specialist until years later, before the third trial. In fact, at the July 29, 2010 pretrial conference on Dr. Peterson's motion for summary judgment on the issue of informed consent, counsel for St. John stated, "Defendant acknowledges that our expert witness has

testified as to his opinion as to informed consent." Counsel for St. John specifically referenced Dr. Wharton's testimony in an attempt to avoid summary judgment for informed consent. Now St. John argues that this same testimony relates to the issue of negligence in failing to refer to a specialist. Consequently, we are not persuaded that the circuit court abused its discretion when it excluded this evidence. The exclusion of this evidence did not amount to error, much less prejudicial error. *See Ruschenberg v. Eliason*, 2014 S.D. 42, ¶ 23, 850 N.W.2d 810, 817.

[¶26.] We affirm.

[¶27.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.