**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

MELVILLE SAMUEL,          )
                                )      **CASE NO. ST-2018-CV-00441**
            **Plaintiff,**      )
                                )
    v.                     )      **ACTION FOR BREACH OF**
                                )      **CONTRACT, CONVERSION &**
CENTURY HILL, INC., LAURIE CRANDALL,)      **PUNITIVE DAMAGES**
and CRAIG CRANDALL,         )
                                )
               **Defendants.**     )

Cite as: 2021 VI Super 40U

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court are:

1. Defendants' Motion in Limine to Exclude Evidence and Testimony From Plaintiff's Witnesses Robert Marshall & Marshall, Crane and McAloon P.L.C., filed January 25, 2021; and

2. Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Evidence and Testimony From Robert Marshall & His Law Firm, filed February 12, 2021; and

3. Defendants' Reply in Support of Motion in Limine to Exclude Evidence and Testimony From Plaintiff's Witnesses Robert Marshall & Marshall, Crane and McAloon P.L.C., filed February 26, 2021.

## I.    FACTUAL BACKGROUND.

¶1    Plaintiff Melville Samuel is the owner of Parcel No. 15C-8 Estate Rendezvous, St. John, V.I. (the "Property"). Effective September 15, 1986, Samuel, as landlord, and Century Hill, Inc., as tenant, entered into a forty-year Ground Lease for the Property. Maurice Poulin signed the Ground Lease as President of Century Hill, Inc. on September 16, 1986, and Laurie Crandall attested to his signature as the Assistant Secretary.

¶2    In exchange for the leasehold interest it received in the Property, Century Hill was responsible for paying a monthly rent starting at $385.01 and ending at $473.51 during the last five years of the lease term. As additional rent, Century Hill was responsible for payment of real property taxes. Century Hill was also responsible for the care and repair of the Property, as well as providing for and maintaining public liability insurance and casualty insurance for not less than

100% of the Property's full replacement value. The Ground Lease specified that the required casualty insurance include windstorm coverage.

¶3    In September 2017, Hurricanes Irma and Maria struck the Virgin Islands causing catastrophic damage to the Virgin Islands and substantial damage to the Property. As of May 13, 2018, the estimated cost to repair the two buildings on the Property was $1,336,730.00[1] which covered labor and materials.

¶4    In a letter dated January 15, 2018, which ended with "Sincerely Craig and Laurie," the Landlord was advised that "[Century Hill] is destroyed beyond repair…there is just no money to rebuild. My parents did have liability insurance for guest and tenants but not nearly enough to cover rebuilding." The letter goes on to say: "I am hopeful that we will be out of there and cleaned by the end of the month."[2]

¶5    By letter dated June 5, 2018, Robert Marshall, an attorney with the law firm of Marshall, Crane, & McAloon, P.C. in Massachusetts, wrote to both Laurie and Craig stating:

> Since I was recently made aware of the fact that Century Hill, Inc. ("Century Hill") received $300,000 of casualty insurance proceeds, I now realize that David and I may have personal liability for unpaid obligations of Century Hill, including any income taxes owed for 2017 and 2018. Our responsibilities with respect to the creditors of the Corporation would not be an immediate concern except for the fact that you have withdrawn $223,000 of the insurance proceeds from Century Hill for your personal use without adequate substantiation.[3]

¶6    By letter dated June 7, 2018, Laurie responded to Plaintiff's May 16, 2018 Notice of Lease Termination stating: "We, Craig, and I made it clear that we would not reconstruct the buildings given the amount of years left on the lease and lack of funds."[4] Laurie also wrote: "Mr. Samuel understood that Century had no ability to reconstruct the improvements on the leased premises; and it was mutually agreed that Mr. Samuel would retake possession of the premises immediately and deliver control to one or more of his children."[5]

¶7    Samuel filed his Complaint on August 30, 2018, alleging breach of contract and conversion. The Defendants filed their Answer, Affirmative Defenses and Counterclaim on January 22, 2019. According to the Complaint, in 2011, Beverly Poulin and Maurice Poulin, officers of Century Hill, began experiencing cognitive difficulties as well as health issues.[6] The Poulins are the parents of Laurie Crandall. Laurie is the wife of Craig Crandall. The Complaint

---

[1] Pl.'s Complaint Ex B.

[2] Pl.'s Complaint Ex. C.

[3] Pl.'s Complaint Ex. G.

[4] Pl.'s Opp. to Defs.' Mot to Dismiss (Feb. 22, 2021) Ex. A.

[5] *Id.*

[6] Pl. Complaint ¶ 11 and Defs.' Answer ¶ 11.

alleges that Laurie[7] took over the financial affairs of Century Hill and the Poulins became non-functioning officers. This allegation is denied in the Defendant's answer. However, in their Motion to Dismiss, Defendants state: "In 2015 his daughter, Defendant Laurie Crandall, took on the role of Manager and assumed the daily management of the Property and the financial responsibilities of Century Hill from Maurice and Beverly Poulin, who became non-functioning officers due to suffering from dementia."[8]

## II.    LEGAL STANDARDS

### 1. Motions *in Limine*

¶8     Defendants' Motion argues that: (1) the attorney-client privilege applies to Marshall's June 5, 2018 letter; (2) "any statements from the deposition of Attorney Marshall that related to privileged attorney-client communications must also be excluded from trial;"[9] (3) testimony and evidence from Marshall and his firm are not relevant because they absolutely "no bearing on the alleged breach of the ground lease contract" and is more prejudicial than probative. [10]

¶9     When making a motion in limine, "the moving party has the burden to show that the evidence is irrelevant or should be excluded."[11] "Generally, '[a] ruling on a pretrial motion *in limine* is necessarily tentative because subsequent evidentiary developments may change the context.'"[12] "Courts recognize that *in limine* rulings are 'necessarily tentative because the court retains discretion to make a different ruling as the evidence unfolds.'"[13] "The purpose of a motion *in limine* is to prevent prejudicial evidence, argument, or reference from reaching the ears of the jury. However, a trial court's ruling on a motion *in limine* is preliminary and may change depending on what actually happens in trial."[14] Additionally, Virgin Islands courts have found that "the purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."[15]

¶10    That said, all "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the

---

[7] To avoid confusion, the Crandalls will be referred to by their first names.

[8] Defs.'s Mot. to Dismiss Craig Crandall.

[9] Def. Mot. in Limine at 4.

[10] *Id.* at 8.

[11] *In re Asbestos, Catalyst & Silica Toxic Dust Exposure Litig.*, 68 V.I. 507, 520 (Super. Ct. 2018) (citing *E.g., Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009) ("The Court will grant a motion *in limine* to exclude evidence only if the evidence in question is clearly inadmissible. The moving party has the burden of proving that the evidence sought to be excluded is inadmissible." (citation omitted)).

[12] *In re Asbestos, Catalyst & Silica Toxic Dust Exposure Litig.*, 68 V.I. 507, 532-33 (Super. Ct. 2018) (quoting *Rufo v. Simpson*, 86 Cal. App. 4th 573, 103 Cal. Rptr. 2d 492, 516 (2001) (citations omitted)).

[13] *Id.* (quoting *People v. Rodrigues*, 8 Cal. 4th 1060, 36 Cal. Rptr. 2d 235, 885 P.2d 1, 67 (1994)).

[14] *Id.* (quoting *accord St. John v. Peterson*, 2013 SD 67, 837 N.W.2d 394, 398 (S.D. 2013)).

[15] *People v. Hatcher*, 68 V.I. ___, ___, 2018 V.I. LEXIS 34, at *4 (V.I. Super. Ct. 2018).

action."[16] "The "any tendency" language makes the standard for Rule 401 relevance very easy to satisfy.[17] Rule 401 does not require the evidence to be dispositive of a fact in issue: the bar is much lower and simply requires that the evidence makes the existence (or non-existence) of such fact more or less likely.

¶11     Generally, "a court has inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances."[18] Even relevant evidence can be excluded from trial "if its probative value is substantially outweighed by a danger of … unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence."[19] "A trial court has wide discretion in determining whether to exclude otherwise admissible evidence under Rule 403." [20]

## 2. The Attorney-Client Privilege

¶12     Section 852 of Title 5 of the Virgin Islands Code governs attorney-client privilege and the work product doctrine in the Virgin Islands:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the client's lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, (5) among lawyers and their representatives representing the same client. This privilege exists whether the person/client actually retains the lawyer or law firm to render professional legal services to him or her.[21]

¶ 13     "In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[22] "The attorney-client privilege … is personal, belongs solely to the client, and generally cannot be asserted by anyone other than the client. Additionally, the burden of showing the existence of circumstances justifying the recognition of the attorney-client privilege rests with the party asserting the privilege, and "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly

---

[16] V.I. R. EVID. 403.

[17] *Id.*

[18] *Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 126 (Super. Ct. 2016).

[19] V.I. R. EVID. 403.

[20] *Fahie v. People*, 62 V.I. 625, 641 (V.I. 2015) (quotation marks and citation omitted).

[21] 5 V.I.C. § 852 (b).

[22] *Fenster v. Dechabert*, No. SX-16-CV-343, 2017 V.I. LEXIS 149 at *26, 2017 WL 4969896, at *11 (V.I. Super. Sept. 27, 2017) (citations omitted).

construed."[23] However, there are a number of exceptions under this section where no privilege attaches.[24]

### 3. The Attorney Work Product Doctrine

¶14    In addition to asserting the attorney-client privilege, Defendants' Motion argues that the attorney work-product doctrine also bars the production of the information sought by the June 5 letter and other testimony. Title 5 V.I.C. § 852(e) governs the work-product doctrine:

> (1) *Qualified Immunity.* Work product immunity may protect an attorney from disclosing to a third party some of the information the attorney creates or acquires while preparing for litigation. Work product materials may be subject to discovery if the party requesting them proves (i) a substantial need for materials, and (ii) an inability to obtain a substantial equivalent of those materials by another method.

> (2) *Absolute Immunity.* An attorney possesses absolute immunity from disclosing work products when they divulge the attorney's 'mental impressions, conclusions, opinions, or legal theories' regarding litigation.[25]

¶15    The work product doctrine promotes: "the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation."[26] When materials are prepared "merely in the ordinary and regular course of a party's business, they are outside the scope of work product protection."[27] Because it is an evidentiary privilege the work product doctrine, like that of the attorney-client communication privilege, "should be strictly construed."[28]

## III.    ANALYSIS

### 1. The June 5, 2018 letter from Attorney Marshall is relevant and will not be excluded.

#### a.  Relevance

¶16    Defendants' Motion claims that testimony and evidence from Marshall and his firm is not relevant because "it has absolutely no bearing on the alleged breach of the ground lease contract."[29]

---

[23] *Id.* (citing *Browne v. People of the V.I.*, 56 V.I. at 235 n. 21 (citations omitted).

[24] 5 V.I.C. § 852 (d) (Exceptions where no privilege attaches: 1) Furtherance of Crime or Fraud; 2) Claimants through same Deceased Client; 3) Breach of Duty by a Lawyer or Client; 4) Accusations Against a Lawyer; 5) Document Attested by a Lawyer; 6) Joint Clients; 7) Public Officer or Agency; 8) Physical Evidence, Fee Arrangements, Pre-existing Documents; 9) Waiver).

[25] Title 5 V.I.C. § 852(e)

[26] *Joseph v. Pricesmart LLC*, Super. Ct. Civ. No. ST-15-CV-62, 2016 V.I. LEXIS 17 at *14, 2016 WL 852095, at *5 (V.I. Super. Feb. 29, 2016) (citations omitted).

[27] *Id.*

[28] *Id.*

[29] Def. Mot. In Limine at 8.

They argue that the June 5, 2018 letter from Marshall is more prejudicial than probative for three main reasons: 1) "it would confuse the issues in the case and mislead the trier of fact,"[30] 2) it "discusses certain insurance proceeds,"[31] and 3) because "the Defendants can stipulate to what happened to the insurance proceeds[,] ...the evidence from Attorney Marshall and the Law Firm are not required and not probative."[32]

¶17     Conversely, Plaintiff argues that the "testimony and evidence by Attorney Robert Marshall are highly probative of Samuel's conversion claim[:]"[33] "[o]n June 5, 2018, Attorney Robert Marshall, counsel to Laurie Crandall, wrote that Century Hill received $300,000 in casualty insurance proceeds and that the Crandalls had withdrawn $223,000.00 of insurance proceeds from Century Hill's account for their own 'personal use' without adequate documentation."[34] Plaintiff claims that the rules of evidence as stated in Defendants' argument "are not to be used as shields to protect [them] from facing the consequences of their unlawful behavior."[35]

¶18     The Court finds that Marshall's June 5, 2018 letter is relevant. Plaintiff's Complaint alleges that "Defendants intentionally exercised dominion or control over the casualty insurance funds, which were designated for the repair of the Property in accordance with the Ground Lease."[36] Marshall's letter to the Crandalls directly discusses how the insurance proceeds were withdrawn from a Century Hill bank account. The Court finds that this proffered evidence has a tendency to make Plaintiff's conversion claim more or less probable than it would be without the evidence. Furthermore, Crandall never disclosed to Samuel that Century Hill had received $300,000.00 in insurance proceeds. In her January 15, 2018 letter to the Samuels she only mentions liability insurance for guest and tenants that was "not nearly enough to cover rebuilding." In her June 7, 2018 letter to Plaintiff's counsel she does not disclose the existence of any casualty insurance.

¶19     Further, Court rejects Defendants' argument that evidence from Marshall would be more prejudicial than probative. Defendants claim that the letter in question is being introduced to "tarnish their reputation and imply that Defendants committed some kind of fraud or conversion."[37] However, Plaintiff claims that he seeks to introduce the letter into evidence to demonstrate "that the Crandalls used Century Hill's insurance proceeds for their own personal use, which is exactly what [Plaintiff's] conversion claim alleges."[38] Given that the Plaintiff's Complaint alleges breach of contract and conversion, the Court finds no reason that this letter would unfairly prejudice a party, cause undue delay, waste time, cause the Court to confuse the issues, nor finds the presentation of this evidence as needless.

---

[30] *Id.* at 11.

[31] *Id.* at 10.

[32] *Id.* at 12.

[33] *Id.* at 2.

[34] *Id.* at 3.

[35] *Id.* at 2.

[36] Pl.'s Complaint, ¶37.

[37] Mot. In Limine at 11.

[38] Opp. to Mot. In Limine at 13.

¶20     Moreover, this matter is set for a bench trial rather than a jury trial where appellate courts "are confident" that the trial court 'can hear relevant evidence, weigh its probative value and reject any improper inferences.'"[39] "Rule 403 'was designed to keep evidence not germane to any issue outside the purview of the jury's consideration.'"[40] Therefore, the Court will not exclude the June 5, 2018 letter on the grounds that it is not relevant.

### b. *Ripeness*

¶21     Defendants' Reply claims that the Plaintiff's "underlying cause of action for which the testimony and evidence from Attorney Marshall is required is not ripe…and has no relevance to this case and cannot be considered probative."[41] Defendants state that the Plaintiff may only bring a claim for conversion "if Century Hill has not repaired the buildings by the expiration of the Lease, and if Plaintiff gives notice and an opportunity to cure."[42] They further reason that "[t]hey are entitled to keep the insurance proceeds until the end of the Lease so that the money is available should they choose to rebuild."[43]

¶ 22     "The ripeness doctrine considers whether a particular controversy presented to the Court is ready for judicial consideration. Its purpose is to 'conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems.'"[44]

¶23     Here, while Defendants argue that Marshall's June 5, 2018 letter should be excluded because it is not ripe, the available evidence on record indicates otherwise. The Notice of Lease Termination Letter informed Century Hill that it "is clearly in default under the Ground Lease and the Ground Lease will be terminated within thirty (30) days absent cure by CH before said date."[45] Therefore, contrary to Defendants' Motion, Century Hill was placed on notice of its defaults under the Ground Lease and provided with an opportunity to cure. Instead, Laurie had an attorney prepare and send the Assignment and Assumption of Lease. In two separate letters Laurie made clear that she had no intention of rebuilding. Ironically, in her June 7, 2018 letter, Laurie stated: "We, Craig, and I made it clear that we would not reconstruct the buildings given the amount of years left on the lease and lack of funds." Century Hill has never produced any evidence that it ever decided to rebuild or that it required more time to cure its defaults. The correspondence exchanged between the parties made it clear that Century Hill had no intention of curing the defaults and rebuilding

---

[39] *Willey v. People*, No. ST-11-CR-631, 2017 V.I. LEXIS 204, at *7-8 (Super. Ct. July 18, 2017) (first citing *Schultz v. Butcher*, 24 F.3d 626, 632, 1994 U.S. App. LEXIS 11944, *16, 39 Fed. R. Evid. Serv. (Callaghan) 1165, 29 Fed. R. Serv. 3d (Callaghan) 108, 1994 AMC 2885 (4th Cir. Va. 1994) (superseded by statute on other grounds).
[40] *Id.*
[41] Def. Reply in Support of Mot. in Limine at 2.
[42] *Id.*
[43] *Id.*
[44] *Gov't of the V.I. v. Southland Gaming of the V.I., Inc.*, 54 V.I. 143, 149 (Super. Ct. 2010) (internal citations omitted) (first citing *Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1187, 25 V.I. 226 (D.V.I. 1990); then quoting Id.).
[45] Pl.'s Compl. Ex. F.

during the remaining term of the Ground Lease. Plaintiff's conversion claim is ripe, and consequently, Marshall's June 5, 2018 letter and his deposition testimony are relevant.

### 2. The June 5, 2018 Letter from Attorney Marshall is not protected by attorney-client privilege.

¶24    The Court finds that the Defendants have failed to meet their burden of showing the existence of circumstances that justify the recognition of attorney-client privilege as to Marshalls' June 5, 2018 letter.

¶25    Defendants argue that attorney-client privilege applies to Marshall's June 5, 2018 letter because the relationship between Marshall and Laurie is sufficient to ask this Court to protect information that falls under it regarding Century Hill.[46] In addition to the letter, Defendants request that "any statements from the deposition of Attorney Marshall that related to privileged attorney-client communications must also be excluded from trial."[47]

¶26    In his Opposition, Plaintiff contends that the letter and testimony at issue should not be excluded due to privilege because "the attorney- client privilege does not apply where there is no attorney-client relationship."[48] Plaintiff argues that the "Defendants' Motion in Limine makes no attempt to list or describe any particular documents or testimony that it claims to be privileged; instead, it merely makes an improper, overbroad blanket assertion of privilege with respect to any testimony by Attorney Marshall."[49]

¶27    Defendants in this case are not clear as to the party claiming the privilege: Century Hill or Laurie Crandall. The Court agrees with Plaintiff's argument and finds that no attorney- client relationship existed between Marshall and Century Hill that would protect the letter. In his deposition on December 8, 2020, Marshall said that "for one month, the month of June, [he] rendered legal services to Laurie Crandall as the manager of Century Hill."[50] When further questioned, Attorney Marshall testified in his deposition that he "never represented the company. [His] only involvement with the company was as indicated previously during the month of June 2018."[51] "The attorney-client privilege protects confidential communications between an attorney and his or her client, encouraging 'clients to make full and frank disclosures to their attorneys, who are then better able to provide candid advice and effective representation.'"[52] Because there is no attorney-client relationship between Marshall and Century Hill, the Court finds that the attorney- client privilege does not apply to the letter or testimony in question.

---

[46] *Id.* at 3.

[47] Def. Mot. in Limine at 4.

[48] Opp. to Mot. in Limine at 4.

[49] *Id.* at 5.

[50] Opp. to Mot. in Limine, Ex. A at 21.

[51] *Id.*

[52] *Joseph v. Pricesmart LLC*, No. ST-15-CV-62, 2016 V.I. LEXIS 17, at *13-14 (Super. Ct. Feb. 29, 2016) (quoting *Browne v. People of the Virgin Islands*, 56 V.I. 207, 235, 2012 V.I. Supreme LEXIS 9, *44-45 (VI. 2012)).

¶28     As to the purported representation of Laurie, the Court finds it self-serving that Marshall only represented her the same month in which he wrote the letter regarding the use of insurance proceeds. In his deposition on December 8, 2020, Attorney Marshall stated that he started representing Laurie Crandall the "first week of June." Prior to that, he represented "the aforementioned deceased parents of Laurie Crandall."[53] He further explained, "I represented Laurie Crandall, as a manager of Century Hill, on a very limited basis, which is all detailed in my billing summary for that one month."[54] In her June 7, 2018 letter to Plaintiff's counsel, Laurie wrote: "I no longer have the law firm of Robert Marshall representing me. Please send all correspondence to me directly."[55]

¶29     If there was an attorney-client relationship between Laurie and Marshall, the letter in question is not automatically considered privileged. First, "[i]n order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[56] The letter from Marshall does not satisfy the last requirement. In his deposition on December 8, 2020, Marshall was asked whether he was providing legal counsel to Laurie:

> Q : "In your letter of June 5th, 2018, you were cautioning Laurie to be careful that Mr. Samuel could be a creditor, but you weren't making any type of opinion of Virgin Islands law as to whether or not his claim was valid; is that correct?"
>
> A That's correct.

¶30     Secondly, the Court finds that the contents of the letter reflect Marshall's role as a fiduciary of Century Hill, rather than as the attorney for Laurie. Marshall is the trustee of two trusts which, between them, hold 100% of the shares of Century Hill.[57] The June 5, 2018 letter expressed Marshall's concern that he "may have personal liability for unpaid obligations of Century Hill, including any income taxes owed for 2017 and 2018."[58] The letter does not provide legal assistance or advice to the Crandalls.

¶31     Finally, Plaintiff asserts that "pursuant to 5 V.I.C. § 852, no attorney-client privilege exists where 'the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.'"[59] Plaintiff argues that "the letter demonstrates that Laurie Crandall sought the services of a lawyer...to aid or enable her and her husband in misappropriating insurance proceeds that quite

[53] Opp. to Mot. Ex. B at 9.

[54] Opp. to Mot. Ex. B at 21.

[55] Pl.'s Opp. to Defs.' Mot to Dismiss (Feb. 22, 2021) Ex. A.

[56] *Fenster v. Dechabert*, No. SX-16-CV-343, 2017 V.I. LEXIS 149 at *26, 2017 WL 4969896, at *11 (V.I. Super. Sept. 27, 2017) (citations omitted).

[57] Opp. to Mot. at 3.

[58] Pl.'s Compl. Ex. G.

[59] *Id.* at 7 (quoting 5 V.I.C. § 852).

[59] *Id.* at 3.

clearly were payable to Samuel under the Ground lease,"[60] and therefore cannot claim attorney-client privilege.

¶32    In response, Defendants state that Plaintiff's "argument is clearly without merit as no conversion has taken place, nor is it even possible for such a fraud to have occurred as Plaintiff, at his point in time, has no right to the insurance proceeds."[61] Defendants further argue: "Plaintiff has no claim on the funds until the end of the Lease and… [s]ince the Lease was never terminated[,] Defendants still have possession of the property and have the right to all the insurance proceeds to be used in the repair of the buildings."[62]

¶33    The available evidence on record and that action of the parties support Plaintiff's position that the lease was terminated when Century Hill failed to cure its defaults. The Defendants fail to reference the record or specific exhibits that justify their argument that the Ground Lease was never terminated. The actions of the parties indicate otherwise. In addition, it appears that Laurie hid receipt of Century Hill's insurance proceeds from Plaintiff and from Marshall. Plaintiff's argument that the services of Marshall were "sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud'"[63] is supported by Marshall's instructions on how to hid the insurance proceeds from attachment by the Plaintiff.

¶34    Marshall communicated to Laurie about the Ground Lease termination and personal use of insurance proceeds in his June 5, 2018 letter. Plaintiff's Complaint alleges conversion which is

> is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Chaput v. Scafidi*, 66 V.I. 160, 195 (V.I. 2017) (internal quotations and citations omitted). Conversion may be committed by intentionally engaging in any of several types of acts, one of which is obtaining possession of a chattel from another by fraud. *See Ross v. Hodge*, 58 V.I. 292, 308 (V.I. 2013).[64]

¶35    In light of Plaintiff's allegations of conversion, Laurie's deception in not disclosing the receipt of casualty insurance proceeds by Century Hill, and Marshall's instructions on removing the funds from Century Hill's bank account, Court finds that the fraud exception to the attorney-client privilege does apply to the June 5, 2018 letter.

---

[60] *Id.* at 8.

[61] Reply in Support of Mot. In Limine at 3.

[62] *Id.*

[63] *Id.* at 7 (quoting 5 V.I.C. § 852).

[63] *Id.* at 3.

[64] *Island Airlines LLC v. Bohlke*, Super. Ct. Case No. SX-2016-CV-00404, 2020 WL 8019119 (Super. Ct. Sept. 16, 2020).

### 3. Marshall's June 5, 2018 letter is not protected by the work-product doctrine.

¶36    Defendants' Motion claims "[a]ny other documents not sent from Attorney Marshall or the Defendants as part of a communication but which were prepared by Attorney Marshall and his firm in anticipation of litigation fall under work product immunity."[65] Defendants' claim, "[t]o force Marshall, Crane and Mcaloon [sic] P.L.C. to turn over all the documents in their possession regarding their work for Defendants would be a serious violation of work product doctrine."[66]

¶37    Plaintiff's Opposition argues that the attorney-work product doctrine does not apply to the June 5, 2018 letter because "is not a document prepared in anticipation of litigation."[67] Plaintiff recounts that the "Defendants' Motion describes the June 5 letter as 'simply offer[ing] legal advice as to which bank account is the best one for depositing the insurance proceeds'" and subsequently argues that "according to the description of the letter in Defendants' Motion, [it] is not work product."[68]

¶38    The June 5, 2018 letter begins with notifying Laurie of the potential liability faced by Marshall and her brother David Poulin for the unpaid obligation of Century Hill and essentially takes her to task for failing to justify or properly explain how she was owed annual compensation for the years 2013 through 2017. The Court finds that the letter is more a critique of Laurie's actions coming from trustee of two trusts which, between them, hold 100% of the shares of Century Hill. The positions occupied by Marshall with respect to Century Hill weigh against a finding that the June 5, 2018 letter was written in anticipation of litigation or as counsel for Laurie. The Court finds that the letter is not subject to protection by the attorney-work product doctrine. The Plaintiff has adequately shown the Court that he has a substantial need for the letter and Marshall's deposition testimony and is unable to obtain the substantial equivalent of those materials by another method.

¶39    As previously addressed by this Court in its February 25, 2020 Memorandum Opinion and Order, the attorney-client communication privilege and the work-product doctrine do not operate to automatically bar all of Marshall's deposition testimony and all documents produced by his firm in response to Plaintiff's subpoena. In the absence of any reference of specific portions of Marshall's deposition testimony or specific documents, the Motion will be denied.

Accordingly, it is hereby

**ORDERED** that Defendants' Motion in Limine to Exclude Evidence and Testimony from Plaintiff's Witnesses Robert Marshall & Marshall, Crane and McAloon P.L.C., filed January 25, 2021 is **DENIED**; and it is further

---

[65] Mot. In Limine at 4 (*citing* 5 V.I.C. § 852(e)(1)).

[66] *Id.* at 5.

[67] *Id.* at 10.

[68] Pl.'s Opp. to Mot. in Limine at 9.

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

Dated: 4|5|2021

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:

**DONNA D. DONOVAN**
Court Clerk Supervisor